## LOVETT v. LOVETT.

1. Upon a divorce *a vinculo*, it is the duty of the chancellor to make a *division* of the estate of the parties. But the law does not require an equal division of the estate, but one graduated according to the nature of the case, considering the cause for which the divorce was granted, the party offending, the age of the parties, the estate to be divided, &c. &c.; but in all cases, if the estate of the husband is sufficient, the wife is entitled to a maintenance.

2. Where the personal estate of the husband, consisting principally of slaves, was valued at $13,685, and his real estate at $1800, the cause of divorce being the abandonment of the husband by the wife, the parties having but two grown children provided for, the estate having been accumulated by the industry of both parties, and they being advanced in life—*Held*, that one third part of the personal estate absolutely, and the use of one third part of the land for life, appeared to be a just exercise of the legal discretion vested in the chancellor.

3. The proper course in such a case is, after the decree has been pronounced, for the divorced party to file an allegation of faculties, setting out the estate of the husband, which he is required to answer, after which, if necessary, proof may be adduced. But where the court, on motion and petition of the wife, referred the matter to the master to inquire and report the estate of the husband, before whom the husband appeared, held, that it was too late to raise the objection.

Error to the Chancery Court at Monroeville.

THE plaintiff in error filed his bill, and obtained a decree divorcing him from his wife, because of her voluntary abandonment of him.

In her answer, the wife suggested that the complainant was the owner of a number of slaves, and other property, and that she was destitute of the means of support in her old age, and by her counsel moved the court for a division of the estate, that she might no longer be dependant on the friendship and charity of others for a support. Thereupon the chancellor made a reference to the master, to take an account of the personal estate of the complainant, the value

thereof, and average value of his income, and what portion thereof ought to be set apart and vested in the defendant, for her maintenance and support. Or whether it would be more suitable and advantageous to her, to be paid annually a sum of money, instead of receiving a portion of the estate.

She also filed a petition, particularly describing the estate of the complainant, and claiming alimony, praying a *ne exeat*, &c.

The master made his report, in which he estimated the personal property of the complainant at the value of $13,685 and his real estate at ........................... 1,800

                                                                $15,845

That his annual nett income was $950. That if it was considered proper to set apart a portion of the property for her use, six good field hands would be a suitable proportion, but he considered it more advantageous to her to receive $400 in money annually.

The defendant excepted to this report—

1. Because it was not in accordance with law, equity, or the evidence.

2. Because the annuity is not equivalent to an equal portion of the estate, nor as suitable or advantageous for the defendant.

3. Because six negroes is neither a lawful or equitable proportion of the estate, there being but one son, and he settled for life.

4. Because the master has merely allowed alimony for life, when the decree is a divorce from the bonds of matrimony.

The complainant also excepted to the report of the master.

Upon the coming in of the report, the complainant moved to dismiss the proceedings, because the answer laid no ground for it, and because there was no petition upon which it could be sustained.

The chancellor refused to dismiss, though he considered it would have been more formal if the defendant had filed her petition, as the ground of proceeding. Yet as the complainant was cited to appear, and did appear, and examine the

witnesses, he declined to dismiss. He further proceeded, and decreed, that as it appeared the complainant had two children, the defendant was entitled in analogy to dower, to one third part of the personal estate absolutely, deducting from the value of the personal estate $1106 debts due by him. That she was entitled to the use of one third part of the land during her life, and if it could not be divided, an equivalent in money. He appointed commissioners to carry the decree into effect, leaving the complainant in possession of the dwelling house and adjacent lands.

From this decree the complainant prosecutes this writ, and assigns for error the decree of the chancellor.

HOPKINS, for plaintiff in ersor.—In England the ecclesiastical courts can grant divorces from bed and board only, even for abandonment or adultery. Upon proceedings for a divorce, at the suit of the husband, for the fault of the wife or her crime, the court would make an allowance against the husband for her support pending the suit. But if the divorce were granted to the husband, no decree could be made against him for an allowance for her support after the divorce. It was otherwise if she obtained the divorce. She would in such event be entitled also to a decree against him for a suitable allowance for her support. [13 Law Lib., Poynter on Mar. & Div. 85, 86; 33 Ib., Shelford on Div. 346, 348, 350.]

Where a wife abandons her husband, she is not entitled to alimony, during her desertion of him, even in a case where he acquired his estate by the marriage with her. [Same book, 85, note B.] *For the same reason he is not liable for her support after a decree of divorce for the abandonment.*] At common law he is not liable for necessaries furnished his wife without his assent. [Clancy's Rights of Mar. Women, 23.] But a court of equity can compel him to furnish necessaries to an obedient wife. [Ib. 23.] But no court can charge him with necessaries furnished her after she has abandoned him. [Ib. 33; 3 Esp. Rep. 256; 2 Black. Rep. 10, 80.]

Divorces *a vinculo* may be decreed in this State for abandonment, adultery, and many other causes. The authority

given to a court of chancery, when it decrees a divorce, to decree also a division of the estate of the parties, intended only to authorize the court to make a decree in favor of the injured parties, as is done in England, upon decrees *a mensa et thoro*, upon such decrees as the latter here, there would be authority to decree alimony to the injured party, independent of the statute, but as divorces *a vinculo* are not granted in England, by any court, there is no principle in the laws of that country, which authorized any allowance of alimony upon a decree *a vinculo*. Hence the enactment was merely intended to authorize courts, upon decrees of divorce *a vinculo*, to provide for the injured party. Surely, where the husband is divorced upon the ground of abandonment, or adultery, either it was never intended that he should be decreed to furnish the woman with a support, after the divorce, or that a woman owning a separate estate, and her husband nothing, divorced from her husband, for abandonment, and adultery, should have a part of her estate vested by decree in her husband, as his property, after the divorce for his crime. [Ib. 88, note, N.]

In no case would there be any authority to decree allowance against the husband, without an allegation of faculties, or as similar proceedings filed by the wife, to which he might have an apportunity of answering. [Ib. 86 ; 33 Law Lib. 347.]

It was not right to allow the wife any thing in this case, and the discretion of the chancellor may be reviewed by the appellate court. [Ib. 90, note, U; Holmes v. Holmes, 33 Law Lib. 250.] If the court had authority to make an allowance, it ought not to exceed one-fourth part of the personal property, as the husband and wife have two children. The court had no power over the real estate of the husband, which is protected in every case by the statute. [Clay's D. 170, § 8; 33 Law Lib. 351.] Yet the decree compelled Lovett to divest himself of a title to one-third of his real estate for the life of a third person. It has carved a freehold out of one-third of his estate, and vested the title to it in a third person. If Lovett, the husband, should die before his wife, the seizin of this third would not, either in deed or in law, descend upon his heirs; if they died before Mrs. Lovett,

their wives would not be entitled to dower in this third. [Co. Litt. title Dower, ch. 5, § 36, and commentary under the head of Seizin.]

The right to decree alimony, is incident to the power of granting divorces.  [33 Law. Lib. 354.]

PECK, contra.

ORMOND, J.—The act authorizing the court of chancery to dissolve the ·bonds of matrimony, requires the court pronouncing the decree, "to order and decree a division of the estate of the parties, in such way as to them shall seem just, and right, having due regard to the right of each party, and their children, if any. Provided, however, that nothing herein contained shall be construed, to compel either party to divest him, or herself of the title to real estate." [Clay's Dig. 179, § 8.] We are now called on for the first time, to construe this law, and we approach the subject with a thorough conviction of the magnitude of the question, and the difficulties surrounding it.

The counsel for the plaintiff in error, has earnestly insisted, that it is impossible to suppose, the legislature intended that a division of the property of the husband should be made between him and his divorced wife, when she has been the guilty cause of the separation; and he has referred us to the canon law of England, to show, that alimony is never allowed the wife, after a decree *a mensa et thoro*, when she is the offending party, and that the act must be understood to apply to those cases where the husband, and not the wife is the cause of the divorce.

There are insurmountable difficulties in the way of this interpretation of the law.   It declares in plain, and unambiguous language, that "the court shall decree and order a *division* of the estate of the parties."   It was not alimony that was to be allowed the wife.   Alimony, is an allowance paid by the husband out of his income, pending a suit for divorce, or after a decree of divorce during the period of their separation, upon a decree *a mensa et thoro*.   The divorce contemplated by this statute, is *a vinculo matrimonii*, and was therefore intended for a permanent provision for the wife.

This is evident from the nature of the thing, as well as from the language employed. It is to be a *division* of the estate; language which could not have been employed, if a portion of the husband's income only was to be appropriated to the use of the wife during her life. It is not only a division of the estate, but it is a division of the estate of the *parties*, and that this applies to the estate of the wife, as well as the husband, is placed beyond all doubt by the proviso, that neither party shall be compelled to divest him, or *herself*, of the title to real estate. It is therefore manifest that it was an actual division of the estate, held by either husband or wife, or by both jointly, which was designed by the legislature, and not an allowance for maintenance, out of the income of the husband.

The law being clear, and unambiguous in its terms, the argument against its expediency is entitled to but little, if any consideration. But is it clear that an enlightened policy would not justify the making a permanent provision for the wife, even where she has been divorced for adultery. It must always in such cases be difficult, if not impossible to trace the causes which, step by step, led to the commission of the crime. Slighted affection, unkindness and neglect on the part of the husband, may be, and frequently are the remote, if not the proximate causes, which lead to the violation of the marriage vow; and although the wife be guilty, the husband is not entirely guiltless. These causes, where they exist, certainly constitute no justification for the wife, but do they not, in some degree, palliate her offence? Independent however of all such considerations, the public at large has an interest, that the offender shall not become an outcast upon society, cut off from the common charities of life, without the means of support, and thus tempted to continue in the commission of vice.

The act, it is true, uses the term *division of the estate*, but it does not, as the argument of counsel supposes, require the court to make an *equal* division of the property, and thus by giving to the divorced wife greater rights in the property of her husband, than she would have had had she been faithful to him, offer a premium for the commission of crime. The act directs the division to be made *in such way as to the*

*court shall seem just and right,* having due regard to the rights of each party, and their children, if any. Here is a large discretion invested in the court, by which the division of the estate may be graduated, according to the nature of the cause for which the divorce was granted—the party offending—the condition and age of the parties—the estate of the husband, and the manner in which it was acquired; whether derived principally from the wife, by their joint exertions, or by the husband's alone—the condition of the family, and the children still depending upon the husband for maintenance, and establishment in life. All these, and other considerations, will necessarily enter into the sound legal discretion of the court, in making the division.

It can admit of no doubt, that the share assigned to the wife of her husband's estate, should be greater when the divorce is obtained by her for his misconduct, than when she is herself the delinquent. In the first case supposed, the wife being cut off from the society of her husband, and from all the comforts of wedded life, without any fault on her part, should be placed by the court in as good a condition, as the nature of the case will admit. The English ecclesiastical courts, go so far in some cases, as to allow the wife one-half the income of the joint estates of the husband and wife. [Cooke v. Cooke, 2 Phil. 40.]

We need not consider this aspect of the case further, as the question before us, is the portion of the wife when she is the delinquent. The adjudged English cases afford no aid in this investigation, as alimony is not allowed to the wife by the canon law, after the divorce, when she is the offending party. Our statute, as we have seen, introduced a new rule, and provided, that in such cases a division of the estate should be made. But in our opinion, a proper regard to public morals requires, as well as the manifest design and purpose of the statute, that the division should be graduated by the quality of the offence, and shall purposely omit all consideration of the manner of the division where the wife has a separate estate, as that fact does not exist in this case.

We are clear in the opinion, that no construction can be put upon the statute, which would authorize the court in any

case, to do less than provide a maintenance for the wife, if the estate of the husband is sufficient for that purpose. We use the term maintenance, in preference to subsistence, because we think the statute evidently contemplated something beyond a mere support. She should be enabled, if her husband's estate was such as to justify it, to live in such a manner, as if possible to enable her to regain her lost standing in society.

The defendant in this case was not an adulteress. Her offence is the abandonment of her husband. This is doubtless a high offence against the marriage relation, but neither in itself, nor in its consequences, so great as the crime of adultery. The chancellor allowed her one-third part of the husband's personal estate, deducting a sufficiency for the payment of his debts, and the use of one-third part of his land during her life, securing to him the use of the mansion, and the grounds adjacent.

We cannot say that this was an improper exercise of the discretion of the chancellor. The parties appear to be in the middle rank in life, as his estate, real and personal, is valued at $15,485. They are now in the decline of life, with grown children, who it seems are settled, and we infer from the report of the master, that the estate has been created by the economy and industry of the husband and wife. Considering the age of these parties, the cause of divorce, and the amount of the estate, we are not prepared to say, that the chancellor has not kept within the bounds of legal discretion, in the division of the estate.

It is further contended that the decree, by vesting in the wife a life estate in one-third part of the lands, has divested the husband of his title. In our judgment the law evidently contemplated a division of land. It directs the court to make a division of the *estate* of the parties. The term estate, is certainly comprehensive enough to include lands, and indeed it might be the only estate the parties possessed. The limitation in the proviso strengthens, instead of impairing this conclusion. The prohibition, that neither party shall be compelled to divest him or herself of the *title* to real estate, in connection with the section to which it is added, shows that some interest was intended to be made, susceptible of

division, and this is satisfied by giving the use, and permitting the fee to remain in the owner. If it had been intended to prohibit the division of real estate, instead of this proviso, the term personal would have been prefixed to the word estate.

The mode of proceeding in the ecclesiastical courts to obtain alimony, is by an "allegation of faculties," as it is called, on the part of the wife, setting out the estate of the husband, which he is required to answer, and which, as it is the income of the husband, is generally conclusive on the wife, but which she may in some cases, contradict by proof. [Shelford on Marriage and Divorce, 586.] This allegation is made whilst the suit is in progress, for alimony pending the suit, or after the decree is pronounced, for a permanent allowance.

The course pursued in this case was merely by motion to the court, upon which the court directed a reference to the master, to ascertain the estate of the husband. The husband appeared before the master, and contested his right. It would certainly have been more regular for the wife, after the decree was passed, to have filed her petition, setting forth the estate of her late husband, and his answer thereto would in all probability have dispensed with the necessity of a reference. But we think it was too late to raise the objection, after the appearance before the master, as every thing was accomplished which would have been if a petition had been filed.

The decree of the chancellor must be affirmed.