## JETER vs. JETER.

[BILL IN EQUITY FOR DIVORCE ON GROUND OF ADULTERY.]

| 36 | 391 |
| 95 | 452 |
| 36 | 391 |
| 113 | 322 |
| 36 | 391 |
| 141 | 359 |

1. *Proof of adultery.*—To establish the charge of adultery by circumstantial evidence, the circumstances proved must be such as would lead the guarded discretion of a reasonable and just man to the conclusion that the crime had been committed; but the fact that the husband, without justifiable cause, voluntarily abandons his wife's bed within a year after their marriage, lends additional weight to suspicious circumstances against him, and tends to give them an unfavorable construction. Tested by these rules, the evidence in this case is sufficient to prove adultery on the part of the husband.

2. *Alimony; how decreed.*—When a decree of divorce *a vinculo matrimonii* is rendered in favor of the wife, the statute (Code, § 1971) authorizes the chancellor to allow her a sum of money in gross by way of permanent alimony.

3. *Amount of alimony.*—In determining the amount of permanent alimony to be allowed to the wife, when a divorce is granted to her on account of the husband's adultery, her own conduct is a proper matter for consideration, (Code, § 1972;) but the mere fact

Jeter v. Jeter.

that, after her abandonment by her husband, she spoke of him and of her former engagement to be married to another man in an indiscreet and improper manner, does not justify the denial of a liberal allowance to her.

4. *Same.*—An allowance of $20,000 to the wife, as permanent alimony, where the value of the husband's estate is between $40,000 and $50,000, would, ordinarily, be excessive; but, under the special circumstances of this case—it appearing that the husband had only two children, the elder of whom was a man thirty years old, for whom he had already made liberal provision, while he disowned the younger, who was the only child of the complainant—is not unreasonable.

5. *What is revisable.*—On appeal from a final decree in chancery, granting to the wife a divorce *a vinculo matrimonii*, and ordering the husband to pay her a specified sum as temporary alimony, and an additional sum to her solicitors as compensation for their services, the order for the payment of the solicitors' fees is revisable; but, on the question whether the order for the payment of temporary alimony is revisable, the majority of the court express no opinion. (A. J. WALKER, C. J., *dissenting*, held that neither portion of the order for the payment of money was revisable.)

6. *Alimony pendente lite.*—An order for the allowance of temporary alimony, though usually made at an early stage of the cause, and on a reference to the master, may be made on the final hearing, and without an order of reference; the allowance is not restricted to a sum sufficient to provide for the wife the mere necessaries of life, but depends on the circumstances and social position of the parties; and the decision of the chancellor will not be reversed by the appellate court, unless the record presents a strong and plain case of error.

7. *Allowance of solicitors' fees.*—An allowance for the fees of the wife's solicitors must be restricted to the actual reasonable value of their services, and should not be made without a reference to the master, or proof as to the proper amount.

8. *Decree affirmed in part, and reversed and remanded in part.*—The decree of the chancellor in this case, granting a divorce to the wife, was reversed, and the cause remanded, as to the order making an allowance to the wife for her solicitors' fees, but was affirmed in every other respect; and the costs of the appeal were imposed on the appellant.

9. *Estimate of wife's statutory separate estate in determining amount of permanent alimony.*—After the delivery of the opinion in this case, affirming the chancellor's decree on the merits, but remanding the cause, in order that a reference to the master might be made to ascertain the amount of compensation to be allowed to the complainant's solicitors, the parties compromised the matters in controversy between them; and after the full execution of the agreement, by which the appellant obtained some advantages to which

Jeter v. Jeter.

he was not entitled under the decree, his counsel having called the attention of the court to the fact, not before noticed, that the wife was shown by the record to possess a statutory separate estate, the value of which did not appear to have been shown in any manner to the chancellor, or to have been estimated by him in determining the amount of her permanent alimony,—*held*, that the decision in the cause, under these circumstances, should not be considered as settling the rule, that an allowance out of the husband's estate, as permanent alimony to the wife, can be sustained on appeal, where the wife has a statutory separate estate, unless it appears that the value of that estate was shown to the chancellor, either by the evidence in the cause, or by the report of the master under a reference. (A. J. WALKER, C. J., *dissenting*, held that in view of the great disparity between the estates of the parties as disclosed by the record, the appellate court should take judicial notice of the fact that the wife's separate estate was not sufficient for her maintenance.)

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. JAMES B. CLARK.

THE bill in the case was filed, on the 26th November, 1858, by Mrs. Sarah Jeter, suing by her next friend, against her husband, Samuel Jeter; and sought a divorce *a vinculo matrimonii*, on the grounds of cruelty and adultery. The defendant filed an answer, denying the charges of cruelty and adultery, and demurring to the bill for want of equity. It appears that the parties were married on the 6th March, 1853; that on the 25th April, 1854, Mrs. Jeter gave birth to a son, the only child of the marriage; that the defendant disowned the paternity of this child, and refused to have any further intercourse with the complainant as his wife: that they continued to live together in the same house, occupying separate chambers, until about the 1st November, 1858, when an altercation occurred between them, growing out of the complainant's refusal to sign a deed, which resulted in her leaving her husband's house, and returning to her father's.

The testimony taken in the cause is very voluminous, but a full statement of it is not material to an understanding of the legal questions here presented. The depositions of Eleazar Taylor and James Singley were

Jeter v. Jeter.

taken by the complainant to substantiate the charge of adultery. Taylor, who was a brother of the complainant, testified as follows: "In the summer of the year 1857, I was at the defendant's house, and stayed all night. About an hour after I had lain down, I had occasion to get up and go out; and when I got down to the foot of the steps, I saw the defendant (it being a moonlight night) out at the edge of the yard, near the carriage-house, and also a negro girl, who, I think, was Emeline. I saw her lie down, and saw the defendant get down over her on his knees; and I then turned, and went out at another door, in a different direction." The material portion of the testimony of Singley, who was the defendant's overseer during the years 1856 and 1857, is in these words: "On one occasion, in the night, I saw a negro girl at his [defendant's] window. She disappeared through the window. I think it was Emeline. On another night, at a late hour, I saw him coming from towards his negro-cabins. Whether he had been in there or not, I wont say. He went towards his room, and soon afterwards I saw a negro girl going after him."

The bill alleged, that the complainant carried to her husband's house, on her marriage, a negro woman and a piano; and that the defendant's property, real and personal, was worth about $80,000. The defendant admitted the allegation of the bill as to the negro woman and the piano, and appended to his answer a list of his own property, estimating its value at $45,900.

At the May term, 1859, before the cause was submitted for final hearing, the complainant applied to the court for an allowance of alimony *pendente lite*, and money to defray the necessary expenses of the suit; and it was agreed that the questions arising on this application should "be considered and decided by the chancellor with the main questions." On final hearing, on pleadings and proof, at the same term, the chancellor held the evidence sufficient to establish the charge of adultery, and granted a divorce on that ground. He also declared that the complainant was entitled to the negro woman and piano claimed by her, and ordered the defendant to deliver them up to her;

granted five hundred dollars to the complainant as alimony *pendente lite*, one thousand dollars to her solicitors as compensation for their services in the suit, and twenty thousand dollars to the complainant as permanent alimony; ordered execution to be issued against the defendant for the payment of these several sums, and declared a lien on his property for the payment of the twenty thousand dollars. The rendition of this entire decree, and of each separate portion of it, is assigned as error in this court.

GOLDTHWAITE, RICE & SEMPLE, with BROCK & BARNES, for the appellant.—1. The testimony in the cause is insufficient to sustain the charge of adultery. The principal witness is the complainant's own brother, whose testimony is unnatural and improbable, and who was not examined until all the other witnesses had failed to sustain the charge. It is shown, too, that the girl with whom, according to the testimony of this witness, the crime was committed, was not at that time fourteen years of age. The evidence is much weaker and more inconclusive than in the case of Mosser v. Mosser, (29 Ala. 313,) which was held insufficient. See, also, Bishop on Marriage and Divorce, §§ 423, 424, 428, 439, 330; Hamerton v. Hamerton, 4 Eng. Ec. R. 13; Bray v. Bray, 2 Halsted's Ch. 506, 628; Ferguson v. Ferguson, 3 Sandford's (N. Y.) 307; Wood v. Wood, 2 Paige, 108; Hart v. Hart, 2 Edw. Ch. 207.

2. The chancellor erred, also, in decreeing to the complainant a sum of money in gross, as permanent alimony. According to the practice of the ecclesiastical courts in England, upon a divorce *a mensa et thoro* in favor of the wife, a gross sum is never given to her as permanent alimony, but allowances are made for her support and maintenance from year to year, payable at stated periods. Bishop on Marriage and Divorce, § 591, and cases cited. But for statutory provisions, neither alimony nor any other allowance could be decreed to the wife, on a divorce *a vinculo;* such a divorce, with its incidents, being unknown to the common law. The statute (Code, § 1971) was

simply intended to secure to the wife, when a divorce is rendered in her favor, a liberal allowance for her support and maintenance, if her separate estate is not sufficient for that purpose. A provision for maintenance should be co-extensive with the life of the party to be supported, for it would be absurd to speak of maintenance as continuing after the death of the party to be maintained. To give the wife a sum absolutely, which she might squander or lose within a year, would be unjust to each of the parties, and would defeat the manifest object of the statute. The decision in the case of King v. King, (28 Ala. 315,) on this point, is erroneous, and ought to be overruled.

3. All the assignments of error are insisted on.

Wm. P. & Thos. G. Chilton, with whom was J. Falkner, *contra.*—1. The direct evidence in the cause, viewed in connection with the defendant's conduct towards his wife, and the state of feeling shown to have existed between them, is amply sufficient to establish the charge of adultery.—Chambers v. Chambers, 1 Hag. Con. 439, (4 Eng. Ec. 445–48;) 7 Eng. Ec. 377; 17 Ala. 250; Bishop on Marriage and Divorce, §§ 423, 330.

2. The allowance of a sum of money in gross, as permanent alimony, was justified by the statute, as has been expressly decided in the case of King v. King, 28 Ala. 315. That the payment of the money may be secured by a lien on the defendant's property, see an analogous case in Foster v. Gressett's Heirs, 29 Ala. 393. The sum allowed, though it might ordinarily be too large, cannot be considered excessive under the peculiar circumstances of this case. It is shown that the defendant, now an old man, has but two children; that he has already made a liberal provision for the elder, while he disowns the younger, the only child of the complainant; and that the sum allowed to the complainant, for herself and child, is about equal to her distributive share of the defendant's estate.

3. The allowance of temporary alimony and solicitors' fees was proper.—Code, §§ 1970–72. The chancellor

Jeter v. Jeter.

was authorized to fix the compensation of the complain-
ant's solicitors, without a reference to the master, and
without the formal introduction of any more proof than
was already before him.—Adams' Equity, 379, note; Le-
vert v. Redwood, 9 Porter, 79; 3 Dan. Ch. Pr. 2130; 5 Ves.
706; 11 *ib*. 328; 6 *ib*. 428; 3 Brown's Ch. (m. p.) 234.
Moreover, the allowance of these items, if not within the
sole discretion of the chancellor, cannot be reviewed on
appeal from the final decree.—*Ex parte* King, 27 Ala. 387.

A. J. WALKER, C. J.—The defendant in this case,
after the lapse of a little more than one year from his
intermarriage with a young lady in the freshness of early
womanhood, utterly abandoned the nuptial bed, and sub-
jected his wife to an almost total exclusion from social
intercourse with him.   This singular state of self-imposed
conjugal estrangement, for which we can deduce from the
testimony no justification, commenced at the very time
when the birth of a child should have drawn him into a
closer and more endearing union, and continued during
a period of more than four years, and until a final sepa-
ration occurred.   It is a teaching alike of human experi-
ence and of the law-books, that in' the marriage state
contented affection is one of the surest safeguards, and
most satisfactory evidences of fidelity; while causeless
alienation, and unaccountable and unreasonable aversion,
are temptations to infidelity, and often the accompani-
ments and results of it.—Bishop on Mar. and D. § 420;
Richardson v. Richardson, 4 Porter, 674.  St. Paul, in the
7th chapter of his first epistle to the Corinthians, has set
forth the regular enjoyment of wedded love as a shield
of virtue; and Milton says, that by it

> "Adulterous lust was driven from men,
> Among the bestial herds to range."

Then, whether we look to the legal authorities above
cited, or to the teachings of nature and holy writ, we are
authorized, in a case of conjugal conduct like that of the
defendant, to yield a more easy credence to circumstan-
ces which impugn the chastity, and may more properly
give suspicious facts an unfavorable construction.

"Adultery is peculiarly a crime of darkness and secrecy; parties are rarely surprised in the act; and so it not only may, but ordinarily must, be established by circumstantial evidence."—Bishop on Mar. and D. § 422; Lawson v. State, 20 Ala. 65, 79. In reference to the character of circumstances requisite to establish the charge, Lord Stowell says: "In every case almost, the fact is inferred from circumstances that lead to it by fair inference, as a necessary conclusion; and unless this were the case, and unless this were so held, no protection whatever could be given to marital rights. What are the circumstances which lead to such a conclusion, can not be laid down universally, though many of them, of a more obvious nature, and of more frequent occurrence, are to be found in the ancient books. At the same time, it is impossible to indicate them universally; because they may be infinitely diversified by the situation and character of the parties, by the state of general manners, and by many other incidental circumstances, apparently slight and delicate in themselves, but which may have most important bearings in decisions upon the particular case. The only general rule that can be laid down upon the subject is, *that the circumstances must be such as would lead the guarded discretion of a reasonable* and just man to the conclusion; for it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations; neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man."—Loveden v. Loveden, 2 Hag. 1, 4 Eng. Ec. 461. Lord Stowell's rule is, perhaps, as definite as any that could be prescribed, and is not variant from the one recognized in this court, that the fact may be inferred " from circumstances leading to it as a necessary conclusion."—Richardson v. Richardson, 4 Porter, 475; State v. Crowley, 13 Ala. 172; Mosser v. Mosser, 29 Ala. 313. Under the rule above set forth, the inference of adultery could not be drawn from circumstances reasonably reconcilable with the assumption of innocence.—Bishop on Mar. and D. 428.

Jeter v. Jeter.

The testimony in reference to the commission of adultery by the defendant, is found in the depositions of the witnesses Taylor and Singley. The circumstances proved by Taylor are, when judged as they "would strike the careful and cautious consideration 'of a discreet man", certainly sufficient "to lead the guarded discretion of a reasonable and just man to the conclusion" of the defendant's guilt. There is no other reasonable supposition which will account for the attitude described of persons of different sexes, occupying the relation which existed between the participants in the transaction at the time and place stated. The charge of adultery has been sustained upon circumstances less conclusive.—Harris v. Harris, 2 Hag. 376. The testimony of this witness is corroborated by that of Singley, which tends to show the perpetration of similar conduct, with the same person, on another occasion. And the relation in which the defendant lived with his wife, and his conduct towards her, the proper influence of which upon the issue was shown at the outset of this opinion, afford to the testimony of Taylor a strong corroboration, by giving to it a complexion of probability and reasonableness. We find nothing in the course pursued by the witness, after he had observed the facts proved, to justify the dispute of his credibility. Corroborated and supported as is the evidence of this witness, we feel bound to give it our fullest faith, notwithstanding he is the brother of the complainant. While his relationship subjects him to the suspicion of bias and prejudice, in such a case as this, it is no ground for the rejection of the evidence; and the corroboration of the testimony takes from the objection the slightest claim to consideration here.—Lockwood v. Lockwood, 2 Curt. 114. The defendant's commission of adultery being established, the complainant was entitled to a divorce *a vinculo matrimonii*, under section 1961 of the Code.

The argument, that the girl with whom the adultery is alleged to have been committed, had not attained the age of puberty, is not supported by the testimony.

[2.] Our law, as it existed before the adoption of the Code, required that the allowance, upon a decree of di-

vorce *a vinculo matrimonii*, should be made by a division of estate.—Clay's Digest, 170, § 8; Lovett v. Lovett, 11 Ala. 763; Quarles v. Quarles, 19 Ala. 363. The language of the present is materially different from that of our old law, and is as follows: "If the wife has no separate estate, or if it be insufficient for her maintenance, the chancellor, upon granting a divorce, must decree the wife an allowance out of the estate of the husband; taking into consideration the value thereof, and the condition of the family."—Code, § 1972. In the case of King v. King, (28 Ala. 315,) upon the authority of this section of the Code, a pecuniary allowance by way of permanent alimony was made by the chancellor, and the decree was affirmed by this court. We have, therefore, the sanction of a judicial precedent for so construing the above copied section of the Code as to permit an allowance to be made by a decree for money, instead of by a division of the estate. This construction of our statute meets the exigency of that class of cases, in which a division of the estate in specie would be impracticable, or inconvenient; is consistent with the decisions in other States in reference to similar statutes; does no violence to the language of the law, and ought to be maintained as correct.—Samford v. Samford, 5 Day, 553; Fischli v. Fischli, 1 Blackf. 360; Richmond v. Wilson, 8 Yerg. 67. It is, therefore, no fatal objection to the chancellor's decree in this case, that it is for alimony to be paid in money.

[3.] The amount of the decree in the complainant's favor is $20,000; and this, it is contended, is excessive. Section 1972 of the Code provides, that "if the divorce is in favor of the wife, for the misconduct of the husband, the allowance must be as liberal as the estate of the husband will permit; regard being had to the condition of his family, and to all the circumstances of the case." The ascertainment of the proper allowance to a woman, obtaining a divorce, can not be subjected to any fixed standard, and it must necessarily be left, in a great degree, to the control of judicial discretion. We have, however, in the section last above quoted, supplied to us

by the legislative hand, the principles which are to influence that discretion. The court must consider the circumstances of the case, the condition of the family, and the estate of the husband, and then make (the husband's misconduct being the ground of divorce) an allowance to the wife, which, viewed in the light of all these considerations, is liberal.

The conduct of the complaining wife, as developed in the circumstances of this case, is certainly a proper matter of consideration. The manner in which the complainant spoke of her husband, in a letter addressed to an unmarried gentleman, who was her relative, and spoke of him and of her marriage to a gentleman with whom she had once had a matrimonial engagement, was extremely indiscreet and reprehensible, but involved no moral turpitude. While these acts can not be passed by without condemnation and censure, as inconsistent with the conduct of a prudent spouse; yet we have no evidence of the occurrence of such conduct on other occasions, and those acts seem to stand as blots upon a history otherwise blameless. Besides, it is some palliation of her improper conduct in those particulars, that it did not occur until her husband had withdrawn every manifestation of affection, and deprived her of his counsel. For such misconduct, perpetrated under such circumstances, justice does not demand the denial of a liberal allowance to her. The defendant imputes a criminality to his wife, which would justify his deportment to her, and deprive her of all claim to his liberality, or to the liberality of the court; but, if such criminality existed, it is his misfortune that he has not been able to prove it, and the court must act upon the case as made by the testimony.

[4.] A rule for the ascertainment of the alimony of a wife obtaining a divorce has been frequently adopted, by which she obtains the same allowance that she would have received had she been widowed by the death of her husband. That rule was adopted in the case of King v. King, (28 Ala. 315,) and has been sometimes adopted in other States.—Thornberry v. Thornberry, 4 Litt. 251; Jeanes v. Jeanes, 2 Har. 142. Bishop, in his able work

on Marriage and Divorce, (§§ 623–625,) commends this rule as a standard, beneath which the court should not fall, except in special cases. It can probably be adopted, with justice and propriety, in a larger number of cases than any other; but the very nature of the subject, the diversity of the considerations to be regarded, and the difference between the parties and families to be affected, all forbid that that, or any other, should be adopted as a universal rule. Cases may be conceived, in which the allowance, according to that rule, would be too little; and others in which it would be too much. It must always be held subject to variation by the circumstances of the particular case.

According to the statement of the defendant's answer, his wealth now amounts to about $46,000. He has two children; both sons; one the child of a former marriage, the other the fruit of his marriage with the complainant. The amount allowed by the chancellor no doubt exceeds the value of the dower and distributive share which the complainant would have received had she survived her husband; and it would be excessive, in the absence of special circumstances justifying a departure from the rule above indicated. Such special circumstances are found in this case. The defendant, with a generosity which we commend, has provided liberally for his oldest son, who is now over thirty years old; and that provision probably exceeds the amount of the allowance to the complainant. The defendant, without any cause which we can gather from the evidence, disclaims the paternity of the child of his present marriage, and exhibits a sentiment towards it which precludes all probability of his voluntarily contributing to its support and education, or permitting it to share in his estate. The wife's expenses and responsibility will on that account be increased, and the duty must devolve upon her alone of bringing the child forward when he attains his majority; and the child can never receive any of his father's estate, save through its mother. By virtue of the chancellor's decree, the mother, with her son, will get a sum less, perhaps, than that which the defendant's older son has already received, and

much less than will be left in the father's hands, to remain an expectancy for the older son. This view of the condition of the family, and of the operation of the decree upon the members, shows that no injustice has been done by the chancellor in fixing the amount of the complainant's alimony, and it ought not to be disturbed.

We entertain no doubt of the authority of the chancellor to secure the payment of his decree, by declaring a lien upon the defendant's property.

[5–7.] So much of the chancellor's decree as pertains to the wife's support pending the litigation, and her expenses of suit, is not, in my opinion, before us for revision. The order of the chancellor upon these subjects is clearly not a final decree, (*Ex parte* King, 27 Ala. 387,) but, on the contrary, is subject to alteration during the pendency of the suit, when there has been a change in the husband's circumstances.—De Blaquiere v. De Blaquiere, 3 Hagg. 322, (5 E. Ec. R. 126;) Rogers' Ecclesiastical Law, 39; Shelford on Mar. and D. 596. As the order for temporary alimony and the wife's expenses of suit was not a final decree, it is not, of itself, the subject of an appeal; for an appeal, under our system, lies only from a final decree.—Code, § 3016. If, then, it is before this court at all, it is by virtue of the appeal from the final decree. An appeal from a final decree, in my opinion, brings before the revising tribunal only those orders which, either directly or indirectly, affect the final decree; but does not bring up any antecedent or contemporaneous order, which does not in the slightest degree affect the final decree. I think the authorities fully sustain this position. Jacques v. Methodist Church, 17 Johns. 559; Wilson v. Troup, 2 Cow. 208; Reid v. Vanderheyden, 5 *ib.* 735–737; Atkynson v. Munks, 1 *ib.* 702; Johnson v. Britton, Dudley's Law and Eq. 24; Woodward v. Marriott, 1 Cooper's Ch. R. (in '37 and '38) 62–68.

An order allowing to the wife temporary alimony and the expenses of her suit, is made without regard to the final decree, or to the question of right upon the merits of the cause.—Richardson v. Richardson, 4 Porter, 467; Bishop on Mar. and D. 581; Wright v. Wright, 1 Edw.

Ch. R. 62; 2 Barb. Ch. 265. The order, therefore, can not in the remotest degree affect the final decree, and, I think, can not be before us upon an appeal from the final decree. We have already held, that the final decree in this cause is correct; and if there is a reversal, we have the anomaly in the law of a reversal upon an appeal, when the thing appealed from, and every thing which touches it, is precisely right: we affirm that which is appealed from, and reverse for an independent matter, not appealed from.

This point will be more striking, if we suppose the case of a final decree in favor of the husband, and yet an order allowing temporary alimony and the expenses of suit to the wife. Could the husband, in such a case, appeal from a final decree in his favor, and reverse the orders for alimony and expense money?

Again; the ground upon which the wife is allowed alimony *pendente lite* is, that it being improper for her to cohabit with the husband during the suit, the court must see that she has the means of living while the suit is in progress before it; and the ground upon which the wife is allowed money, with which to defray her expenses of suit, is, that as the husband has all the money, and the wife none, she would be unable to litigate with her husband, unless by the compulsion of the court the husband supplied her with the requisite means.—Bishop on Mar. and D. 569, 571. Now, it seems to me a most singular proposition, that the alimony should be given to the wife to enable her to live during the suit, and the expense-money to carry on the litigation, and yet that those allowances should be subject to revision upon appeal from the final decree. But my brethren think, that the appeal from the final decree brings up all the order compensating the complainant's counsel.

While there is a difference of opinion as to what is brought before us for revision by an appeal from the final decree, the court is unanimous in the opinion, that the order for temporary alimony and the expenses of the suit is revisable. This court revised such an order in *Ex parte* King, (27 Ala. 387;) and such orders were the subject of

frequent revision, on direct appeals from them, in the ecclesiastical court of England.—Rees v. Rees, 3 Phil. 387, 1 E. Ec. R. 418; Shelf. on Mar. and D. 595. While the orders are revisable, the amount of the temporary alimony, depending upon the circumstances in life and social position of the parties, can not be subjected to any definite rule, but necessarily must be left, in a great degree, to the discretion of the chancellor—to the *boni viri arbitrium;* and consequently, it is the uniform practice of revising tribunals to affirm the decree for the maintenance pending the suit, unless there is presented a strong and plain case of error.—Burr v. Burr, 7 Hill, 207; Shelf. on Mar. and D. 595. We cannot say that the chancellor's allowance here presents such a case. Nor do we think the chancellor erred in determining the amount of that allowance without the intervention of a reference, though a reference of the matter would have been the more usual and safe course. The temporary alimony is not restricted to a mere provision for the wife of that which is actually necessary to her living; and consequently, it is not indispensable that the chancellor should have evidence of the cost of the wife's board and clothing, before he pronounces upon the amount of the allowance. Hence, the order has been often made without evidence upon that point, and without a reference to the register.—Rogers' Eccles. Law, 37; Wright v. Wright, 1 Edw. Ch. 62.

The allowance of a solicitor's fee stands upon a different footing. That must be restricted to the actual reasonable value of the services rendered, or to be rendered. The chancellor, therefore, erred in allowing the fees of the wife's solicitors, without proof as to their proper amount, and without an inquiry through the register. The chancellor did not have before him the facts necessary to enable him to determine the amount of the fees. 2 Barb. Ch. Pr. 268.

Though it is the usual and better course for the temporary alimony to be made at an early stage of the cause, it may be made upon the final hearing.—Frankfort v. Frankfort, 3 Curteis, 715, 7 En. Ec. R. 558; Bishop on Mar. and D. § 589.

[8.] Upon the authority of numerous precedents in this court, we will render a judgment, affirming the decree of the chancellor in every respect, except as to the allowance of solicitor's fees; and as to that matter alone, the decree of the court below is reversed, and the cause remanded.—Whitman v. Abernathy, 33 Ala. 154; Saltmarsh v. Smith, 32 *ib.* 404; Reese v. *Kirk, 29 ib. 406*; Pettit's Adm'r v. Pettit's Distributees, 32 *ib.* 288.

The appellant must pay the costs of the appeal.

STONE, J.—The majority of the court differ from the chief-justice only on a single point, necessary to be noticed in this opinion. As the whole court concur in the opinion, that the allowance made to Mrs. Jeter, for alimony, or support *pendente lite*, was not unreasonable; and, as a consequence, hold that, if that question be properly before us, we all unite in affirming the chancellor's decree in that respect,—we need not, and do not, announce any opinion on the question, whether the appeal brings that question before us. Nor do we announce what would be our opinion, if, pending the litigation, and before final decree, the chancellor had ordered Mr. Jeter to pay to Mrs. Jeter's next friend a sum of money to defray the expenses of litigation. That question is not presented by this record.

In the present case, no order was made requiring Mr. Jeter to pay the expenses of the suit, while the litigation was in progress. In the final decree, and only in the final decree, the chancellor ordered that Mr. Jeter should pay for legal services rendered by two law firms, to each firm a specific sum, as a fee in this case. This was done without any reference to ascertain the amount; and the decrees were made directly in favor of the solicitors. There being a final decree in this cause, of which the order in question is a part, from which final decree an appeal is prosecuted, we think this question is properly before us. In thus holding, we think we are supported by many analogies in our system, and that we best pursue the harmonies of our law of appeals. For instance : In a suit in which a divorce is granted, the chancellor frequently makes a final

order as to the custody of the children. So, in suits in which a receiver is appointed, compensation for the services of the receiver is generally decreed. Neither of these orders bears directly on the final decree rendered, and a reversal of them would not, in the one case, impair the force of the decree for divorce; and in the other, would not unsettle the principles of the account, while it might somewhat affect the sum for division. On an appeal from such final decrees, we apprehend no one would deny, that the ruling of the chancellor as to the custody of the children, and in regard to the receiver's compensation, would present a proper subject for revision.—Garner v. Prewitt, 32 Ala. 13.

The error of the chancellor on the question of solicitor's fees, has been pointed out by the chief-justice.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application for a rehearing by the appellant's counsel, the following opinion was delivered:

A. J. WALKER, C. J.—A rehearing is sought in this case, upon the ground that the statute now in force does not permit the rendition of a decree for a sum of money in gross to a party obtaining a divorce, but requires that the decree should merely provide for her support and maintenance. This question is covered by the decree in King v. King, (28 Ala. 315,) and we might content ourselves by referring to the doctrine of *stare decisis*. But, as we think the decree in King v. King can be vindicated by fair reasoning, we prefer not to dispose of the questions raised in a manner so summary.

The section of the Code, under which the decree for a sum of money in gross was rendered in this case, is in the following words: "If the wife has no separate estate, or if it be insufficient for her maintenance, the chancellor, upon granting a divorce, must decree the wife an allowance out of the husband's estate; taking into consideration the value thereof, and the condition of his family." Code, § 1971. Alimony, in the ecclesiastical law, was a provision for the maintenance of the wife; but the defi-

nition of alimony affords no analogy to guide us in the construction of this statute. The reasons why it does not are—that, in England, alimony was never allowed, where there was a divorce *a vinculo*, (Bishop on M. & D. § 563; Godolphin's Ec. Law, 508; Bleeker v. Cooper, 7 S. & R. 500;) and our statute has not used the term " alimony." The court is to make an allowance out of the defendant's estate. The word *allowance*, it is contended, *ex vi termini* implies a stated sum, to be paid from time to time, for the maintenance of the complainant, which must terminate with her death. It must be admitted, that the term is often used in that sense, and is used in that sense in section 1970, which speaks of the provision for the wife's support pending the suit. But then it is susceptible of a much more enlarged signification, and is often used to denote a sum or thing granted or permitted by the law; and indeed, is, frequently used in the Code itself in that sense.—Code, §§ 2556, 2379, 1825. In that sense, we think it was used in the section above quoted; and it may as well embrace the decree of a sum in gross, as of sums payable at stated intervals. Even in reference to alimony *pendente lite*, it is permissible to wait until the final decree, and adjudge to the wife a sum in gross, instead of making allowances from time to time.

The statute of Ohio, upon the same subject, uses precisely the same term that is found in ours; and the supreme court of that State has decided, that under it the court may render a decree for a gross sum, or for installments payable at stated intervals.—Pratt v. Pratt, 9 Ohio, 37.

Judge Stone assents to the result attained, mainly on the authority of King v. King, but does not concur in the reasoning.

The petition for a rehearing is overruled.

NOTE BY REPORTER.—The appellant's counsel afterwards made another application for a rehearing, on the ground that the record showed that the complainant had a separate estate, while it did not appear that the value

of this estate was in any manner shown to the chancellor, or estimated by him in determining the amount of her permanent alimony; and they contended that an allowance out of the husband's estate, for permanent alimony, was only authorized where the wife's separate estate was shown to be insufficient for her maintenance. In opposition to the application, the appellee's counsel adduced affidavits, showing that, since the delivery of the foregoing opinions, all the matters in controversy between the parties, relating to their money and other property, had been compromised, and the agreement of compromise fully executed; and they insisted, that this precluded investigation into the legal question presented by the application. In answer to this application, the following opinion was delivered:

A J. WALKER, C. J.—It appears that Mrs. Jeter had, at the time of the marriage, some property, which, under our statute, became her separate estate. No reference was made to the register, to ascertain the value of this separate estate; nor does it appear that its value was shown to the chancellor, by any evidence taken in the cause. But this objection to the decree was never made, nor was the attention of the court called to the facts alluded to, until after the opinion of the court had been delivered, a petition for rehearing on other grounds overruled, and the parties had, by mutual agreement, made a settlement of all the matters involved in the litigation. On this settlement, the complainant and the defendant made mutual concessions, and the defendant obtained material advantages, to which he was not entitled under the decree of the chancellor. This voluntary settlement, the stipulations of which had been fully performed on both sides, precludes a reconsideration of the cause in this court. But the majority of the court think that, under the circumstances, the decision in this cause should not be construed as settling the rule, that in cases where the wife has a separate estate, a decree for an allowance out of the husband's estate can be sustained on appeal, unless it appears that the value of such separate

27

estate was shown to the chancellor, either by evidence taken in the cause, or by a report of the register made upon a reference for that purpose.—See Code, § 1971. But 1 think, that where the disparity between the husband's' estate and the separate estate of the wife is so great as appears in this case, the court may take judicial cognizance that the separate estate is not sufficient for the maintenance of the wife; especially as the question of allowance is, by the law, very much a matter of judicial discretion.