## HUGHES vs. HUGHES.

1. A divorce will not be granted for cruel, barbarous and inhuman treatment, unless there has been either actual violence committed, attended with danger to life, limb or health, or a reasonable apprehension of such violence.

2. Proof that the defendant was habitually intoxicated, that when drunk, he was a quarrelsome, turbulent, dangerous man, that he had used profane and abusive language towards his wife, threatening to inflict personal violence upon her, that he had endeavored to execute his threats by chasing her through the house and yard, and attempting to strike her with a chair, and that he had on one occasion inflicted personal violence upon her by kicking her, establishes a case of legal cruelty, sufficient to entitle the wife to a divorce.

3. A bill which charges the defendant's habitual intoxication, and his violence resulting therefrom as evidenced by his threats and abuse, "that he used the most gross and abusive language toward complainant, cursing her, and compelling her through fear of his violence to seek safety in quitting his presence, that he made threats of personal violence, such as would endanger her personal safety, as well as her life and limbs," and specifies particular instances of his misconduct, substantially alleges sufficient to entitle the complainant to the relief prayed, and puts the defendant in possession of the charges to be proved against him.

4. Acts of cruelty committed after a reconciliation revive the former cruelty, condonation being always conditional.

5. In suits for divorce, a sworn answer denying the allegations of the bill does not impose upon the complainant the necessity of establishing her case by two witnesses, or one witness with corroborating circumstances. The statute (Clay's Dig. 170, § 6,) merely con templates a formal denial of the allegations of the bill, and does not require a sworn answer.

ERROR to the Chancery Court of Montgomery. Tried before the Hon. J. W. Lesesne.

WATTS & JACKSON, for plaintiff in error:

1. The proof shows that the defendant is guilty of cruelty in a legal sense, both in threats and kicking his wife.—Moyler v. Moyler, 11 Ala. 620 ; Otway v. Otway, 1 Eng. Eccl. R. 200 ; Hulme v. Hulme, 2 ib. 208-9 ; D'Aquilar v. D'Aquilar, 3 ib. 329 ; Shelford on Marriage and Divorce, (marg. p.) 425, 432 & 430.

2. One act of cruelty is sufficient.—Popkin v. Popkin, 3 Eng. Eccl. R. 325 and notes.

3. Condonation will not apply in this case.—Worsley v. Worsley, 6 Eng. Eccl. R. 249; condonation is not held as strictly against the wife as against the husband.—D'Aquilar v. D'Aquilar, *supra*.

4. Condonation must be pleaded in bar.—Beeby v. Beeby, 3 Eng. Eccl. R. 338; Dance v. Dance, 3 ib. 341 and notes.

5. After reconciliation, fresh acts of cruelty revive previous acts of cruelty.—Worsley v. Worsley, 6 Eng. Eccl. R. 249; Shelford on Marriage and Divorce, (marg. p.) 436.

T. WILLIAMS, *contra:*

1. A bill filed for divorce on the ground of cruelty, must set forth the facts which constitute cruelty.—Hill v. Hill, 10 Ala. 527. Therefore, the demurrer to the bill for this cause should have been sustained, and the bill dismissed at complainant's costs.

2. The proofs show that after many of the charges, the parties lived and slept together; this was condonation, and no proof of subsequent acts to revive the original cause of complaint.

3. The answer was sworn to, and denied the allegations; the answer should prevail, unless overturned by the ordinary proof required, which was not given.—The statute declares (Clay's Dig. 170, § 6,) that proof shall be required to support the allegations thereof, (the bill) as in cases where they (the allegations) are denied by the answer;" if allegations are denied by answer, then the answer prevails, unless overturned by two witnesses, or that which is equal to it.

CHILTON, J.—This was a bill filed by the plaintiff in error against the defendant for divorce *a vinculo matrimonii*, upon the alleged ground of cruel, barbarous and inhuman treatment, consisting of profane and abusive language, charging her with a want of chastity, threatening to inflict upon her personal violence, and to destroy her life, and in attempts to injure her person, which she avoided by escaping from him, and secreting herself; whereby her life has been endangered, and she kept in continual fear, &c. The bill also charges habits of intoxication upon the defendant, and that he has cruelly treated certain members of the family, children of the complainant by a former marriage.

The defendant in his answer fully denies the charges of cruelty, &c. made in the bill. Several witnesses were examined, and the chancellor upon the final hearing, deeming the proof of cruelty, &c. insufficient to warrant a decree for divorce, dismissed the bill. We entirely coincide in opinion with the chancellor, that the great rule which guides the court in cases of this kind has not been too strongly stated by Sir William Scott, in Evans v. Evans, 2 Hagg. Con. R. 35, and re-affirmed in Lockwood v. Lockwood, 2 Curtis's, 281, and by this court in Moyler v. Moyler, 11 Ala. R. 625. That rule is, that a divorce will not be granted for cruel, barbarous and inhuman treatment, unless there has been either actual violence committed, attended with danger to life, limb or health, or a reasonable apprehension of such violence. Guided by this rule, we have carefully examined the testimony, and we are compelled by the view we take of it to come to a conclusion different from that attained by the chancellor.

It is shown by all the witnesses who were examined, that the defendant for several years next preceding the separation, had abandoned himself to the constant habit of intoxication; that his language was unmanly, obscene, and often most profane to his wife. Mrs. Rebecca Hall proves, that on one occasion, he kicked her, having returned home drunk between midnight and day, in consequence of which she arose out of bed, and remained up all the remainder of the night apparently much excited. At another time shortly before their separation, he attempted to inflict personal violence upon her with a chair. Mrs. Cushing has seen him chasing complainant through the yard, and she much excited endeavoring to keep out of his way. She has found the complainant at late hours in the night in the kitchen, endeavoring to avoid the defendant, having the appearance of being very nervous, and afraid that he would inflict personal violence upon her. In the fall of 1848, it appears by this lady's testimony, the complainant had to take refuge in the cook house, and bar the doors, so as to avoid the defendant, looking as though she was much alarmed.

Howell B. Tatum proves threats of personal violence on the part of the defendant, and that he frequently cursed and abused complainant.

W. T. Moore, a witness examined on the part of the defendant,

Hughes v. Hughes.

proves that his habits unfit him for taking charge of the planta-
tion, and that he was intoxicated the greater portion of his time;
that upon one occasion when drunk, after abusing the complain-
ant, he insulted a young man, a relation of hers, who had vis-
ited her sick son, and ordered him off the place, that they had a
fight, and that defendant was afterwards put in prison on a
charge of an assault with intent to kill, &c.; that complainant
frequently left home through fear, and at one time under advice
of counsel, sued out articles of the peace against her said hus-
band, deeming it necessary for her protection. This witness
further states that on one occasion when drunk, defendant ran
the complainant through the house; that defendant appeared
to be dangerous when intoxicated, and had no regard as to the
weapons he would then use.

Mr. and Mrs. Greene, who went to reside with this family
about the middle of November, 1848, and who remained three
months, are examined by the defendant, and they testify that
they saw no evidences of unkindness on the part of the defen-
dant, either toward the complainant or the family. It will be
remembered, however, that during their stay, Mr. Hughes was
absent a portion of the time, (how long does not appear) in the
State of Louisiana. Mr. Greene also states that the defendant
indulged in the general habit of intoxication, and was considered
when drunk a quarrelsome, turbulent and dangerous man. Many
portions of these depositions were objected to by the defendant's
counsel, but we think that granting him the benefit of every ob-
jection which can with plausibility be insisted on, enough re-
mains to show that the conduct and treatment of Mr. Hughes
to his wife was cruel in the legal sense of that term. In other
words, it rendered the cohabitation unsafe, and placed her un-
der reasonable apprehension of great bodily harm. The proof
clearly presents him as having abandoned himself to the domin-
ion of the grossest habits of inebriety; that his affections have
become entirely estranged from his wife; that when intoxica-
ted, (and the proof shows that he is almost continuously so, this
habit having become so inveterate,) he is turbulent and danger-
ous; that he has threatened her, and attempted to execute his
threats by pursuing her in the house, through the yard, and in
attempting to strike her with a chair; more than this—he is
presented as returning home amid the stillness of the midnight

Hughes v. Hughes.

hour, and instead of seeking seclusion in another room, as one not lost to a sense of shame and a decent regard for his family would most likely have done, he enters the bed chamber, and in a boisterous manner, abuses and kicks her. The proof presents a series of most unwarrantable conduct on the part of the husband, and if we leave out of view the proof of actual violence, there remains enough to show that this complainant cannot, without fear of such violence as will endanger her life, limb, or health, continue the matrimonial cohabitation with the defendant. But the whole case, in connection with the circumstances detailed by the proof in giving a history of it, (only a few of which we have stated,) in our opinion, clearly entitles the complainant to the relief which she prays by her bill.—Otway v. Otway, 2 Phillimore 95; (S. C. 1 Eccl. R. 200;) Evans v. Evans, 1 Hagg. 38; Moyler v. Moyler, 11 Ala. 620. The deportment of the defendant, coupled with his disposition and intemperate habits, affords the complainant just ground to apprehend such personal danger as to render the discharge of the marriage duties impracticable on her part. It may be that all this is the result of intemperance. We believe it is; but if men will indulge in habits which lead to such enormities, they must suffer the consequences.

We confess that we have had some difficulty in arriving at the conclusion, that the bill before us sufficiently sets forth the facts which constitute the cruelty complained of. It is not sufficient to set forth the *conclusion* that the conduct of the party was cruel, barbarous and inhuman, but the bill must state the facts which constitute such cruelty, barbarity, or inhumanity.—Hill v. Hill, 10 Ala. 527.

This bill charges that the defendant has made threats of personal violence, "such as would endanger her personal safety, as well as her life and limbs." It then proceeds to give instances of his conduct, coupled with threats, by reason of which she was compelled to leave his house for safety, and seek refuge in the kitchen among the servants, and other places. It also charges the defendant with using the most gross and insulting language, cursing the complainant, and compelling her, through fear of his violence, to seek safety in quitting his presence; and these facts are charged as a few of the numerous instances of a like kind, which frequently occurred. His habits of intoxication are also

charged, and his violence resulting therefrom, as evidenced by his threats and abuse, is stated, in consequence of which, for several years, she has been kept in a state of constant alarm, and well grounded fear of personal injury. Now, although we think the allegations might have been more specific in stating the character of the threats, yet we are not prepared to hold that the bill is so defective as to require that it should have been dismissed for that reason. It is stated that they were threats of *personal violence*, and such as compelled her to flee for safety, &c. The bill is certainly inartificially drawn, but we think it substantially alleges sufficicient to warrant the relief, and puts the defendant in possession of the charges to be sustained by proof against him.

We think there is no ground for holding that the cruelty complained of has been condoned. Conceding that there was a reconciliation after most of the alleged cruelty had transpired, yet it is shown that it was renewed and kept up until 1849, when the separation took place. It is well settled that fresh acts of cruelty, after a reconciliation, revive the former cruelty, condonation being always conditional.—Worsley v. Worsley, 2 Lee 572; S. C. 6 Ecc. R. 249.

The position that the sworn answer puts the complainant upon proof of the allegations denied, by two witnesses, or one witness with strong corroborating circumstances, cannot be maintained. This was so decided in Moyler v. Moyler, 11 Ala. 620. The statute manifestly contemplates that the answer shall be a formal denial of the allegations, and need not be sworn to. If the party chooses to swear to it, it makes no alteration as to its legal effect. Its admissions do not dispense with proof as to the material allegations, so neither should its denials require greater proof.

Where the 4th section of the act of 1820 (Clay's Dig. 170, § 6,) says " that proof shall be required to support the allegations thereof, as in cases where they are decided by answer," it means the answer previously spoken of in the same section—a formal answer denying the allegations, and not sworn to. It is very clear that the Legislature did not design to put these cases upon a footing with ordinary chancery proceedings; but by making the recovery of the complainant depend on the proof, to render it wholly independent of the admissions of the answer.

Upon the whole case, we think the complainant should be entitled to the relief prayed. The decree of the Chancellor dismissing the bill must be reversed, and the cause remanded for further proceedings consistent with this opinion.