## Ex Parte SMITH.

[APPLICATION FOR PROHIBITION TO CHANCERY COURT.]

| | |
|---|---|
| 34 | 455 |
| 114 | 642 |
| 34 | 455 |
| 116 | 366 |
| 34 | 455 |
| 131 | 479 |
| 34 | 455 |
| 131 | 89 |
| 34 | 455 |
| 132 | 127 |

1. *How nature of bill is determined.*—The real nature of a bill in chancery is to be determined rather by its substance—that is, by its allegations and object—than by the title given to it by the pleader.
2. *Bill to impeach final decree for fraud.*—A bill which seeks to impeach a final decree for fraud, is not a bill of review, nor a supplemental bill in the nature of a bill of review, but an original bill in the nature of a bill of review.
3. *When decree of divorce may be impeached for fraud.*—A decree of divorce, rendered by a chancery court in this State, may be impeached for fraud, by a bill filed for that purpose, before it has been ratified by the legislature.

4. *Jurisdiction of chancellor to decree alimony to wife pending suit for divorce.*—Independent of its statutory powers to make an allowance for the support of the wife pending a suit for divorce, (Code, § 1970,) the chancery court has original jurisdiction to make an order for such allowance to the wife, pending a suit by her to impeach for fraud a decree of divorce in favor of her husband.

5. *When prohibition lies.*—A prohibition will only be granted by the supreme court, where an inferior court has exceeded its jurisdiction, and the relator has no other remedy.

THIS was an application by Jeremiah Smith, for a writ of prohibition, or other remedial process from this court, to be directed to the chancery court of Randolph, Hon. JOHN FOSTER presiding, to vacate, set aside, and prevent further proceedings under an interlocutory order of said chancery court, rendered in a suit therein pending, wherein said Jeremiah Smith was defendant, and Mrs. Margaret E. Smith, his wife, complainant. The record submitted with the application shows the following facts:

On the 7th July, 1856, Jeremiah Smith filed his bill in said chancery court, asking a decree of divorce from his said wife on the ground of adultery. A subpœna was executed on the defendant on the 9th July, as shown by the sheriff's return. A decree *pro confesso* having been duly entered, the cause was submitted for final decree, on the bill, decree *pro confesso* and proof, at the ensuing August term; and the chancellor then rendered a decree in favor of the complainant, dissolving the bonds of matrimony between him and his wife. On the 13th August, 1857, Mrs. Smith filed her bill in said court, styling it a "bill of review;" setting out the proceedings had in the divorce suit instituted by her husband; impeaching the decree therein rendered on the ground of fraud, and asking that it might be reviewed and reversed, and that such other relief might be granted as the justice of her case might require. After the defendant had filed an answer to this bill, Mrs. Smith applied to the court, by petition, asking alimony *pendente lite*, and an allowance to enable her to carry on her suit. In response to this petition, the chancellor rendered an interlocutory decree, ordering the defendant to pay his wife, for her support and maintenance pending the suit, the sum of two hundred dollars

*per annum,* in semi-annual payments, and the further sum of one hundred dollars to her solicitors. The rendition of this decree is the matter complained of by the petitioner.

John T. Heflin, for the petitioner.

J. Falkner, with Smith & Aiken, *contra.*

R. W. WALKER, J.—The real nature of a bill is to be determined rather by its substance—that is, by its allegations and object—than by the title which the pleader chooses to give it. The bill in this case is called by the complainant a bill of review. It is obvious, however, that it is not a bill of review; for that cannot be filed, except upon the ground of error on the face of the decree, or of new matter which has arisen or been discovered since the publication of testimony in the original suit. Nor is it what is termed a supplemental bill in the nature of a bill of review, for this also is founded upon the occurrence or discovery of new facts. The object of the bill is to impeach a final decree for fraud; and this can only be done by an original bill filed for that purpose. Such a bill is sometimes called an original bill in the nature of a bill of review.—Story's Equity Pl. § 426; Munsell v. Morgan, 3 Brown's Ch. 74, 79; Mitf. Eq. Pl. 113; Edmondson v. Mosby, 4 J. J. Marsh. 497; Allen v. McLellan, 2 Jones' (Pa.) 328.

In the case of Greene v. Greene, 2 Gray, 361, the supreme court of Massachusetts held, that a decree for divorce from the bonds of matrimony, rendered by a court having jurisdiction of the subject-matter and the parties, (the defendant either appearing, or being legally summoned to defend,) cannot, although obtained by fraud and false testimony, be set aside on an original libel filed at a subsequent term.—See, however, Bishop on M. & D. §§ 697-9. But in that case, the decree which was sought to be annulled operated a dissolution of the marriage, and fixed the *status* of the parties. Such, as we will see, was not the effect of the decree which this complainant has

assailed, and the reasons on which the decision just cited is founded are inapplicable.

Article 6, section 13, of the constitution of this State, is in these words: "Divorces from the bonds of matri-mony shall not be granted, but in cases provided by law, by suit in chancery; and no decree for such divorce shall have effect, until the same shall be sanctioned by two-thirds of both houses of the general assembly." This language is so plain as to leave no room for reasonable controversy; and we have no hesitation in declaring it as part of our fundamental law, that a decree for divorce from the bonds of matrimony, rendered by a chancery court in this State, has no effect as a dissolution of the marriage relation, until it has received the sanction of the legisla-ture.—See Harrison v. Harrison, 19 Ala.

The marital relation between these parties was, then, still subsisting when the complainant filed her bill, im-peaching as fraudulent the decree rendered in favor of her husband. Under these circumstances, we have no doubt that the chancery court had jurisdiction of the case made by the bill.

Section 1970 of the Code is in these words: "Pending a suit for divorce, the court must make an allowance for the support of the wife, out of the estate of the husband, suit-able to his estate and the condition in life of the parties." The chancellor held, that this case, though not falling within the letter of the section just quoted, was embraced by its spirit and design; and he rested his authority to make the order here complained of, upon this provision of the Code. The ground on which we prefer to place our decision, relieves us of the necessity of expressing an opinion on this point.

According to the common law of England, as admin-istered in the ecclesiastical courts, alimony *pendente lite*, and money to defray the expenses of the suit, are allowed as incidents to a suit for a divorce, whether the wife be complainant or defendant.—Bishop's Mar. & Div. §§ 569, 574; Shelf. M. & D. 586–7; Frith v. Frith, 18 Geo. 271; Coles v. Coles, 2 Md. Ch. D. 341; Osgood v. Osgood, 2 Paige, 621. The principle is, that the wife's right

to these allowances grows out of the relation between the parties, and the nature of the proceeding. We have no ecclesiastical courts here, but the jurisdiction which they exercise over the subject of divorce, is with us confided to the chancery court. The jurisdiction is to be exercised according to the rules and principles established by the common law, except so far as those rules and principles may be in conflict with our statutes, or with the genius of our institutions. Hence it follows, that the right of the chancery court to make an allowance for *ad-interim* alimony, and for the expenses of defending or prosecuting the suit, does not depend wholly on the statute, and would exist independent of it; and that it still exists, in all cases in which it was allowed at common law, and as to which the statute is silent.—Bishop's M. & D. § 574; North v. North, 1 Barb. Ch. 241; McGee v. McGee, 10 Geo. 477; Melizet v. Melizet, 1 Parsons' Sel. Cases, 78; Richardson v. Richardson, 4 Por. 467, 479; Mix v. Mix, 1 Johns. Ch. 108.

It become important, therefore, to inquire in what cases, and under what circumstances, these allowances were made by the ecclesiastical courts. Lord Stowell, on one occasion, said: " In suits instituted by the husband or the wife, (for I consider that fact to be indifferent,) the wife is a privileged suitor as to costs and alimony; and on the same principle that the whole property is supposed by law to be in the husband. If the wife, therefore, is under the necessity of living apart, it is also necessary that she should be subsisted during the pendency of the suit, and that she should be enabled to procure justice by being provided with the means of defense."—Wilson v. Wilson, 2 Hagg. Consist. R. 204.

Mr. Bishop, in his work on Marriage and Divorce, says: " When a suit is pending for a divorce, either from bed and board, or the bond of matrimony, or to declare a marriage duly solemnized void from the beginning, it is legally improper for the parties to cohabit together; and this without reference to what may be the ultimate result of the suit. The single fact, therefore, that it is pending, is, on the principles already laid down, alone sufficient to entitle the wife, who has no sufficient property of her

own, whether plaintiff or defendant, to alimony during its pendency. It is not so, ordinarily, in other judicial controversies between the husband and wife; for there they may cohabit, here they may not. When, however, a suit for any purpose between a husband and wife is attended by such circumstances as bring it within this principle, he will be compelled to support her separately while it is pending."—Bishop, § 569.

Now, if, before a divorce has been consummated by receiving the legislative sanction, a bill is filed impeaching the decree for fraud, it is altogether proper, we think, that the decree should be suspended, until the application assailing it is heard. Otherwise the divorce might be confirmed by the legislature, pending a proceeding to have it set aside in a court which has the general power to annul such decrees. The power of the court to annul a decree thus confirmed is, perhaps, open to question.—See Greene v. Greene, 2 Gray, 361. It thus appears that the marriage-tie had not been dissolved when this bill was filed, and ought not to be until it is heard and disposed of. Here, then, is a litigation between husband and wife, in relation to a divorce, during the pendency of which it is legally improper for them to cohabit. Upon this ground alone, according to the rule stated by Mr. Bishop, the authority of the court (independent of any statute on the subject) to allow alimony *pendente lite* could be upheld. See Tayman v. Tayman, 2 Md. Ch. D. 393.

Upon the whole, our conclusion is, that the chancellor did not exceed his jurisdiction in the interlocutory decree rendered in this case. The writ of prohibition is issued to restrain the unauthorized action or proceedings of the inferior courts; but it is never granted, except where the inferior court has exceeded its jurisdiction in the order complained of, and the relator has no other remedy to which he can resort for his protection.—*Ex parte* Smith, 23 Ala. 94; *Ex parte* City Council of Montg'y, 24 Ala. 98 (100); The People v. Seward, 7 Wend. 518; *Ex parte* Greene & Graham, 29 Ala. 57.

The application is denied. The petitioner must pay the costs of this motion.