## TURNER *vs.* TURNER.

[BILL IN EQUITY FOR DIVORCE ON THE GROUNDS OF CRUELTY AND ADULTERY,
AND FOR GENERAL RELIEF.]

1. *Decree for divorce, assignments of error in relation to; when will be
   stricken out in this court.*—Assignments of error which question the
   validity of a decree for divorce from the bonds of matrimony, will not
   be heard upon appeal to this court, unless the appeal has been taken
   within three months from the date of the enrollment of such decree ;
   but upon motion in this court such assignments will be stricken out.—
   Const. of Ala. 1867, Art. 5, § 30.
2. *Decree, enrollment of ; date of, how fixed.*—The date of the enrollment
   of the decree for divorce in such a case, is the date of the decree as
   recorded in the minutes of the court by the register.—Revised Code,
   §§ 641, 725, cl. 4.
3. *Husband, domicil of; when not domicil of wife; what change of, will
   not deprive wife of.*—The wife remaining in this State, after the husband
   has removed to another State, is not to be deprived of the right to sue
   the husband, in the court of her domicil, for divorce and alimony,
   though he may be domiciled in the State of his new home.
4. *Condonation, always conditional.*—Condonation is always conditional.
   A renewal of the acts complained of by the wife, is such a revival of the
   acts condoned as will justify a divorce for the same.
5. *Cruelty ; what acts of sufficient to authorize divorce.*—Striking the wife
   in the face, choking her, and pulling her hair, by the husband, are such
   acts of cruelty as will authorize a divorce in this State.
6. *Decree for divorce in favor of husband, by court of another State ; when
   no bar to jurisdiction of court to decree relief in suit for divorce by the wife
   in this State, against the husband.*—A suit for divorce, commenced by
   the wife in the courts of this State, who is herself resident in this State
   at the time she sues, is not to be affected by another suit, subsequently
   commenced by the husband, for a divorce against her in the courts of

another State, to which he has removed, and to which the wife did not accompany him, and to which suit the wife was not a party, except by publication, although the husband's suit may be terminated by a decree in his favor against the wife, before her suit against him is terminated here. The jurisdiction of the court of this State, having attached in favor of the wife here, it will continue to be entertained, until its powers are fully enforced in her favor, regardless of the decree in favor of the husband rendered by the court of such other State.

7. *Alimony, amount of; what not excessive.*—A permanent allowance to the wife, on a decree for divorce, of the sum of $30,000, is not too liberal when it appears that there are no children by the marriage, and but three children by a former marriage, who are each sufficiently well provided for, and that the estate of the husband is worth $100,000.

8. *Alimony pendente lite; what not too large.*—An allowance to the wife pending a suit for divorce in her favor of $800, is not excessive when it appears that the husband's estate is worth $100,000.

9. *Solicitors of wife, fees of; when allowance of, may be made out of estate of husband.*—In a suit for divorce, in favor of the wife, on the grounds of cruelty and adultery, if it appears that she has no separate property of her own, the wife will be allowed reasonable counsel fees out of the husband's estate, for services actually performed.

10. *Voluntary gift or conveyance; when will be declared void.*—A voluntary conveyance or gift of property made by the father to a son, after the father has been sued for divorce and for permanent alimony, on the grounds of cruelty and adultery, will be declared void when it appears that such conveyance or gift was made to defeat the rights of the wife, and when the son had been properly made a party to the suit for divorce.

APPEAL from the Chancery Court of Talladega.
Heard before Hon. B. B. McCRAW.

The original bill was filed in this cause in the chancery court of Talladega, on the 2d of December, 1867, by the appellee, Ann G. Turner, against her husband, Matthew Turner, and his son, E. C. Turner. The bill prays for a divorce *a mensa et thoro* from the defendant, Matthew Turner, on the ground of adultery, cruelty, abandonment, &c., for alimony *pendente lite*, and for permanent alimony and for general relief. The complainant also charged that E. C. Turner, the son and agent of Matthew Turner, by his instructions and by virtue of a power of attorney from said Matthew Turner, is rapidly selling or removing from the State the property of Matthew Turner, in order to defeat the effect of any decree for alimony which might be rendered in her favor, and really to leave her without support,

and prayed that both defendants be enjoined from removing or selling any of the property of said Matthew Turner until the further order of the court, or until her proper allowance or alimony is secured to her, and also that a lien be declared upon the real and personal estate of defendant, Matthew Turner, for raising such sum of money, &c., and for general relief. Upon bond being given, injunction was issued as prayed for.

The marriage took place in 1853, at which time and up to the 27th of September, 1867, both complainant and defendants had resided in Talladega county, in this State, and complainant still resides therein.

Service was effected on E. C. Turner on the 23d December, 1867, and on the 2d of January, 1868, he filed his answer, denying all the material allegations of the bill as far as related to himself, and denying, as far as he had knowledge, the charge of adultery, cruelty, &c., against the defendant, Matthew Turner. He also demurred to the bill for want of equity and for multifariousness, and sets up condonation as to the adultery charged against defendant, Matthew Turner.

At the date of the filing of the bill, Matthew Turner was absent from the State, he having left on the 27th day of September, 1867. Previous to this, he had proposed to his wife (complainant,) to go to Kentucky to spend the summer, to which she agreed, if he would promise to be kind to her and not to abandon her ; but to this proposition he was always silent. Some time before he left, he asked, and tried to induce complainant to sign away her dower in most of his real estate, which he proposed to give off to his children, by former marriages, in trust for his grand-children. Upon her refusal to do this, he made conveyances of the property as aforesaid ; but, as he alleged, only after the refusal of complainant to accept any offer he had made for a settlement of property on her. After this he informed complainant that he had changed his mind, and was only going to look at the country. He afterwards left the State for Indiana. On the 17th of September, before leaving, and before his preparations for the trip were all complete, he went to complainant, bring-

ing witnesses with him, and, without telling her where he was going, asked her if she was going with him. "Complainant, when this was proposed before, had several times told him that she would go with him if he would only promise faithfully not to treat her harshly, as he acknowledged had been the case in the past, and not to abandon her. Before this request, complainant had been made aware, by a letter which came into her hands, that Matthew Turner had advised with attorneys as to what was necessary to get a divorce, and as to which was the better State, Indiana or Kentucky ; and, also, of the form of the question in which he was to ask complainant to go with him, in order, if she did not do so, to prove abandonment. When complainant heard this very form of words asked her, she was grieved and afraid, and she again told him if he would only promise not to be harsh to her, and not to abandon her, she would go. But to this inquiry he remained silent, and on again asking complainant if she would go, she answered : 'I'm afraid ! I don't know what to do.' The defendant then turned to his witnesses and said : 'You hear her say she won't go!' and then bid her farewell.'" [The opinion sets out the main evidence in relation to the place, and *bona fides* of defendant's residence after leaving in September.]

The original bill, filed by complainant, set forth that the defendant, Matthew Turner, had left the State, and at that time was a resident of the State of Indiana, and prayed for an order of publication. Soon after this Matthew Turner returned to this State, and after several summons had been returned "not found," on oath of complainant that he was secreting himself and avoiding service of process, an attachment was ordered to issue. Service was accordingly effected on him, February 14th, 1868.

At the February term, 1868, leave was granted complainant to amend her bill by striking out the words *a mensa et thoro*, and inserting instead thereof *a vinculo matrimonii;* which was accordingly done. On 3d April, 1868, Matthew Turner filed his answer to the original and amended bills, denying all the material allegations, except the adultery charged with the negro woman Sally, as to which he sets

up condonation, &c.  [The facts in relation to this part of
the case are fully set out in the opinion.]  He admits
making the voluntary conveyances in 1867, as charged by
complainant, to his children, in trust for his grand-
children; but avers that this was only done after repeated
rejection by complainant of offers made by him of a suit-
able settlement on her, and after a refusal on her part to
make any proposition as to what she would consider a
suitable provision for her; that this was not done for the
purpose of leaving her without a support, and that he is
still willing to make suitable provision for her.  He sets
up condonation and the plea of the statute of limitations
as to all the charges, and demurs to the bill for want of
equity and multifariousness.

After this, several interlocutory orders and decrees for
alimony *pendente lite* were made, and the cause continued
until the February term, 1869. · After this, leave was
granted defendant, Matthew Turner, to file an amended an-
swer to the original bill.  The amended answer sets up,
that " since the original bill in this cause, and the institu-
tion of this suit, to-wit, on or about the 30th day of Janu-
ary, 1869, the contract of marriage, and the bonds of mat-
rimony then and before that time existing, were duly, legally
and finally dissolved, by a legal, valid decree and judgment
of the 'court of common pleas of Floyd county, in the State
of Indiana;' that said court was a legally organized court
of record of said county and State, and 'invested with
general jurisdiction within the territorial limits of Indiana,'
and with plenary powers, jurisdiction, &c., within the limits
of said State of Indiana; and that said court had jurisdiction
to render said decree, which is still of force and unreversed;
that at the time of the institution of the suit and the ren-
dition of the said judgment and decree, 'he was, and had
been for more than twelve months before, a ' *bona fide* ' res-
ident citizen of said county of Floyd, State of Indiana;'
that the rendition of said decree is a full and complete
answer and bar to the matters and things set up and com-
plained of, and to the relief sought."

Attached to this answer, is a certified transcript of all

29

the. proceedings in said divorce suit in the court of common pleas of Floyd county, Indiana.. From this it appears that Matthew Turner, by his attorneys, filed his petition for divorce on the 28th of September, 1868, alleging that he had married Ann G. Turner in 1853, and lived with her as his wife until September, 1867, " during all of which time he had been a faithful, kind and affectionate husband, and that in September, 1867, the defendant, without any. just cause or provocation, abandoned the plaintiff, and has ever since refused and still refuses to live with him as her husband, nor is there any reasonable probability that they will become reconciled, or will ever live together again as husband and wife ; wherefore, the plaintiff demands judgment that he may be divorced, &c., and for other relief." Affidavit was made by G. V. Hawk, Turner's attorney, that Ann G. Turner was a non-resident of the State of Indiana, without stating where she resided, or that her residence was unknown'; and thereupon, publication was ordered for thirty days in the " New Albany Weekly Ledger," a paper of general circulation published in said county and State. On January 30th, 1869, the court rendered a decree, which, after stating the appearance of the plaintiff and the default of the defendant ; that publication in the New Albany Ledger had been duly proved, adjudges that complaint be taken as confessed against the defendant ; " thereupon came R. J. Shaw, who defends on behalf of the State, and by consent plaintiff's depositions on file are published, and this action is submitted to the court for trial, and the court, after hearing the proofs, finds that the material allegations of the complaint are true, and that plaintiff is entitled to relief as therein prayed for. It is, therefore, considered by the court, that the marriage contract heretofore entered into, and now subsisting between said Matthew Turner and Ann G. Turner, be and the same is henceforth finally, fully and completely dissolved, and the parties, and each of them, are freed from all the obligations thereof, at the costs of the plaintiff."

The laws of Indiana, in regard to divorces, are also made an exhibit to the answer. By the act approved May 13th, 1852, section 7 thereof, " abandonment for one year, or for

a less period, if the court shall be satisfied that reconciliation is improbable," is made a ground for granting a divorce. Clause 7 of section 7, which, after naming causes for divorce, gives an additional ground, to-wit: "Any other cause for which the court shall deem it proper that a divorce should be granted." By the act of March 4th, 1859, amendatory of the laws in relation to divorces, it is enacted, that " divorces may be decreed by the circuit courts of this State on petition filed by any person who, at the time of the filing of such petition, shall have been a *bona fide* resident of the State one year previous to the filing of the same, and a resident of the county at the time of filing such petition, which *bona fide* residence shall be duly proven by such petitioner to the satisfaction of the court trying the same." By the same act it is enacted, that divorces can not be granted for abandonment for less period than one year.

At the August term, 1869, the cause was submitted for final decree, on original and amended bills, answers and exhibits, and the testimony.

On the part of the complainant, twenty-four witnesses were examined, and fifteen witnesses on the part of respondents. The depositions of these witnesses are very voluminous, and it is impossible for the reporter to set out even an abstract of the testimony, without cumbering the report with a mass of evidence entirely unnecessary to an understanding of the points decided. The weight of the testimony abundantly sustains the charges of cruelty, adultery, &c. [The opinion sets out the evidence as to the condition in life of defendant, the amount of his estate, and the main features of the case.]

The final decree was rendered on the 14th of August, 1869, and ordered to be enrolled as of that date. It decrees, among other things, a divorce in favor of complainant from the bonds of matrimony with defendant, Matthew Turner ; decrees an allowance of $800 for alimony *pendente lite*, heretofore decreed by the court, and not paid, and the sum of $30,000 as permanent alimony to complainant, "to be hers in absolute right, and when paid, to be in lieu of dower and distribution in his estate." It further decreed

that all the property conveyed by the defendant, Matthew C. Turner, to E. C. Turner, in this State, since the 1st day of January, 1869, by voluntary conveyance, is declared subject in his hands to the satisfaction of this decree. It was further decreed, that both defendants be enjoined from removing from the State, or otherwise disposing of the property of Matthew Turner, in this State, until the decree is complied with. It was further decreed, that complainant have leave to file a supplemental bill, against such persons as she may be advised, to reach and condemn to the satisfaction of the decree, any property of Matthew Turner, and any property that he owned on 1st January, 1869, and which he conveyed to voluntary donees.

On the 27th of November, 1869, the defendants appealed, and now make fourteen assignments of error, the following, among others:

1st. The court erred in the decree rendered.

2d. The court erred in rendering a decree for divorce from the bonds of matrimony in favor of complainant, against defendant, Matthew Turner.

3d. The court erred in decreeing that Matthew Turner pay complainant the sum of $30,000 for permanent support and maintenance, "to be hers in absolute right."

4th. That the court erred in decreeing an injunction against defendants to prevent their removing or disposing of the property of Matthew Turner until the decree was complied with.

5th. That the court erred in decreeing all the property conveyed by Matthew Turner to E. C. Turner, in this State, since January, 1869, by voluntary conveyance, subject to the satisfaction of the decree, &c.

6th. That the court erred in allowing $800 *pendente lite*.

The motion of appellee, in relation to striking out the assignments of error relating to the decree for divorce, is fully set out in the opinion.

BRADFORD, WHITE & RICE, for appellants.
MORGAN & LAPSLEY, for appellee.

PETERS, J.—The bill in this case was filed by the wife

against the husband, in the chancery court of Talladega county, in the eastern chancery division of this State. The suit was commenced on the 2d day of December, 1867. The causes alleged for the divorce are adultery, and cruelty by. the husband to the wife. The original bill was for divorce from bed and board, but afterwards, it was amended by praying a divorce from the bonds of matrimony. There is also a prayer for alimony *pendente lite,* and for permanent alimony, and for general relief.

. The husband, Matthew Turner, and his son, Edwin C. Turner, are made parties defendant to the proceeding. Both defendants answer, and deny the charges against them severally made in the bill, so far as each defendant has knowledge of the facts which constitute such charges.

The husband denies the allegations of cruelty, and all acts of adultery, except that charged with the colored woman Sally, in 1856, or 1857, and sets up condonation and the statute of limitations as to all the charges, and demurs to the bill for want of equity and multifariousness. His answer to the charge of adultery with Sally, so far as the adultery is concerned, is in these words: "Respondent states that complainant charged him with a want of conjugal fidelity at the time stated in this section of the bill, and that she did, after making the charge, voluntarily say to respondent that she would forgive him."

The charge to which this is intended as the answer is as follows : " Oratrix can not, as she is advised, properly and truly present to your honor the grounds of her complaint without reciting some of the painful facts in the history of her married life, which she would gladly withhold if she could do so in justice to herself. Within three or four years after her marriage, oratrix had been absent from home, on a Sunday evening, in company with another lady connected with the family, on a visit to a near neighbor. On her return, which was probably sooner than her husband expected, she found him engaged in adulterous association with a negro woman named Sally, his slave, and in a room in the house in which oratrix and her husband resided. Oratrix before that time had no suspicion that her husband was thus wronging her ; and the discovery of the fact

was entirely accidental on her part. She was deeply grieved and deeply offended at this conduct, and so expressed herself, to her husband, and she made up her mind that she could not, with self-respect, remain his wife, and so informed him. Thereupon, the defendant, Matthew Turner, confessed the wrong he had done oratrix, and himself asserted that he had been overcome in a moment of weakness, and that it was his first departure from a virtuous life, and affirmed that it would be his last. He asked oratrix to forgive him. After consideration of the matter, oratrix thought it was her duty to forgive him, and did so. Oratrix had never since that time known him to be guilty of a similar departure from duty; but on this day has been for the first time informed of such a fact. Oratrix forgave him in her heart, and did not afterwards, so far as she is aware, permit this matter to interfere with her conduct towards her husband. The woman, Sally, who was a house servant, was still retained in service about the house, notwithstanding oratrix requested her husband to have her removed; and she supposes, that the servant, finding herself supported by the authority of her master, became insolent to oratrix, whereupon she chastised her. Oratrix's husband complained at her on this account, and forbade her to do so. Oratrix told her husband, that as long as he retained her about the house and under her management, she would punish her for any insolence that she might offer her, and the temper of her husband being roused, he threatened to whip oratrix, and made the woman, Sally, go out and get switches for that purpose. He forbore to strike her, however, and contented himself with threatening to whip oratrix."

The decision was for the complainant in the court below, granting a decree for divorce from the bonds of matrimony, and allowing the wife alimony *pendente lite*, and also permanent alimony. The defendants below appeal to this court, from this decree.

Before this cause is considered on its merits, it is necessary to dispose of the appellee's motion to strike out those assignments of error which relate to the decree for

divorce, because it appears that the appeal was taken after the lapse of three months from the date of the decree.

The transcript shows that the final decree of divorce was rendered on the fourteenth day of August, 1869, and ordered to be enrolled by the chancellor, as of that date.

The appeal was taken on the twenty-seventh day of November, 1869.

This shows that the appeal was not taken within three months after enrollment of the decree.

The section of the constitution of the State on this subject, which must govern the court, is in these words: "Divorce from the bonds of matrimony shall not be granted, but in the cases now provided for, and by suit in chancery; but decisions in chancery for divorce shall be final, unless appealed from in the manner prescribed by law within three months from the date of the enrollment thereof."—Const. Ala. 1867, art. 4, § 30,

The language of this section of the constitution is too clear for doubt. It is a peremptory order to this court, which it has no choice but to obey and enforce. This is a decree for a divorce from the bonds of matrimony, and upon this issue it is final in the cause after the three months mentioned in the constitution have expired. "The enrollment" of the "decision," here referred to, is the entry of the decree upon the minutes of the court, which is properly done as of the day the decree bears date, and which is required to be read in the court on the next morning and signed by the judge at the end of the term.—Rev. Code, §§ 641, 725, cl. 3, 3470; Rule Ch. Pr. No. 64. After the time mentioned in the constitution has expired, the decree for divorce becomes absolute. Its further litigation is ended, and its further consideration on appeal is denied to this court. It must, therefore, stand as it was enrolled. This is the only rational meaning the language of the constitution will admit, that gives any effect to the word "final," which it does not have without the aid of this section. It negatives the right of appeal, after the expiration of the term mentioned.—1 Kent, 316; *Ex parte Smith*, 34 Ala. 455; Adams' Eq. 375, 388. The constitutional provision repeals the section of the Code upon appeals, in such cases,

Rev. Code, § 3508. The motion to strike out the assignments of error referred to is therefore allowed, at appellant's costs. But even if this were otherwise, there is abundant evidence in the record, which is wholly free from suspicion, to sustain the chancellor's decree for a divorce from the bonds of matrimony. When it is considered that the defendant was old enough to have been his wife's father, that he had been thrice married and was a fraternising member of a Christian Church, his conduct was shamefully cruel, deceitful and inhuman towards his wife, from his first detection in adultery in 1856 or 1857, till he left her in September, 1867, under pretense of going to Kentucky; but in truth, for the purpose of going to Indiana and procuring a divorce. This is, in part, shown by his letter written from that State, on the 10th day of December, 1867, to her, in which, after rejecting her photograph which she had sent him, he says, "*you done me a bad wrong, a big sin;*" at the same time renewing an old slander, that he had hurled against her in 1862, when he told her that she and Matilda, a negro woman, "both were as thick with Jim Harris as the hairs on a dog's back." This charge was utterly groundless, as is shown in Mr. Harris' deposition. This was before the complainant's bill was filed. But after the bill was filed, and before the year's probation had terminated in Indiana, which was supposed to authorize the defendant, Matthew Turner, to procure a divorce there, he quite changed his mind. Some twenty or thirty days after the complainant's bill was filed, the defendant, Matthew Turner, wrote to his father-in-law, George Macon, his wife's father, in North Carolina, in which he says:

"*Dear Sir:* This will inform you that I am in great trouble—more than any one; and I call upon you to help me, and intercede for me. I pray you to do it, or it will not be done, for my good and for my wife's also. I want you to get her reconciled with me if it be possible. *I do love my wife and want to live with her as long as I live;* I ask you for the Lord's sake, and for the good of both me and my dear wife. I will not consent to a separation, and if I done wrong to her, I will humbly confess to her and my God, and will solemnly vow to her and God I will do

it no more. *Dear Ann has sued me for a divorce. She can dismiss it any day she thinks proper ;* but for me to consent, I will not. I desire to pray you to intercede and get it settled, so as we may live happy". This was written from "Joe Davis county" in Indiana, while the defendant was domiciled in that State, waiting for the term of twelve months to expire, after which he would be entitled to a divorce in his new location. And it was written concerning the complainant, whom the proof shows to have been beaten by this defendant in her face with his fist, until "one third part of her face" was" black and blue :" the same person at whom he had thrown a mug, at the breakfast table, with such force, that it had been shattered into atoms against the wall, by the force of the blow; the same woman whom he had choked at night in their private bed-room, until she was so nearly suffocated, as to need the support of his arm, until she was so far recovered as to be able to sit up in bed, and which had made "the blood gush from her nose and mouth," (Mrs. Turner's deposition,) and the same dear wife whom he had compelled to stand in the floor, before him and his paramour, the colored woman, Sally, and cower under the switches which the latter had brought for the chastisement of her, then, mistress ! These are but a portion of the proofs upon which the chancellor's decree is founded. There can be no possible doubt of its accuracy.—*Moyler v. Moyler,* 11 Ala. 620 ; *David v. David,* 27 Ala. 222; *Smedley v. Smedley,* 30 Ala. 714 ; *Mosser v. Mosser,* 39 Ala. 313 ; *Hardin v. Hardin,* 17 Ala. 250 ; *Goodrich v. Goodrich,* June term, 1870.

The defendant, Matthew Turner, also relies on condonation by the wife. Condonation is always conditional. A renewal of the causes of complaint revives the right of the condoning party to insist upon the former offenses. It has been well said by a distinguished chancellor of this State, that "as to the question of what will amount to condonation of the wrongs and injuries sustained by the wife, when it has to be inferred from the acts of the wife, it would be exceedingly difficult to lay down any fixed general rule, which should govern all cases. The wife, who is timid and fearful, shrinks with horror and dismay from the

odium which attaches to a separation from her husband, and becomes the patient martyr of his tyranny and brutality, rather than seek peace in a separation, unless a time should arrive in the history of her sufferings, when, justified by the opinion of the world, and sustained by the counsel of friends, she might seek freedom in abandoning him. Such patient endurance would not amount to " condonation." The proof here shows that the defendant, Matthew Turner, repeated his acts of cruelty and infidelity upon more than one occasion, long after any acts of condonation by the wife.—Glover's dep., and McCall's dep.; *Hughes v. Hughes*, 19 Ala. 307 ; *Harrison v. Harrison*, 20 Ala. 629 ; *Reese v. Reese*, 20 Ala. 785 ; 2 Bish. on Mar. and Div. § 53 to 73, 4 ed. 1864 ; 2 Bish. on Mar. and Div. § 384, *et seq.*, § 471, *et seq.* The Indiana divorce in favor of the husband, Matthew Turner, against his wife, the complainant, may protect him upon a charge of bigamy, should he marry again in this State.—*Thompson v. The State*, 28 Ala. 1. But without stopping to inquire whether it was obtained by him by fraud, and therefore is vicious on that account or not, it certainly cannot effect the rights of the complainant, except her right in the husband as husband. If it is valid, it unmarries him and sets him free from his marital vows to her. He is no longer the complainant's husband. But it does not settle her right to alimony ; it does not settle her right to dower in his lands, and her statutory right to distribution of his property in this State, in the event she should survive him, nor any other interest of a pecuniary character she may have against him.— *Webster v. Reid*, 11 How. 460 ; *Nations v. Johnson*, 24 How. 206 ; *Boswell's Lessee v. Otis*, 9 How. 350 ; *Mills v. Duryee*, 7 Cr. 481 ; *Darcey v. Ketchum*, 11 How. 171, 172 ; *McElmoyle v. Cohen*, 13 Pet. 330 ; 2 Amer. Lead. Cases, 551 ; 3 Phill. Ev. on C. and H. notes, p. 353, note 636. It is the duty of the State to protect its own citizens, within its own borders. This is the natural compensation for allegiance. This high duty extends to all the pecuniary rights of the citizens, as well as to the rights of security of person.— Foster's Cr. Cas. p. 188 ; Story, J., in *U. S. v. Rice*, 4 Whea. 246, 254. No obligation of comity is paramount to this

duty. Without a constant and effective exertion of it, citizenship would become a farce.—*Reid v. U. S.*, 3 Quart. Law Journ. p. 122; S. C. 4 Div. C. C. 21; *U. S. v. Moore*, 3 Cranch, 160, note. The wife is as much the citizen of the State as the husband, and is entitled to the protection of its laws to the same extent, so long as she remains within its jurisdiction. It would be a scandal to justice to imperil her, and sacrifice her most important and cherished rights upon a mere technicality; a technicality that often contradicts the truth. When her protection requires it, it would be cruelly unjust for the State, of her actual residence and domicil, to repudiate its own right of jurisdiction to give her aid. I therefore think that the better opinion is, that she has the right to file her bill here, and to all the relief that the court could give her, notwithstanding her husband might not be domiciled in this State at the commencement and during the whole pendency of her litigation with him.—2 Bish. Mar. and Div. § 156, 4th ed.; *Cheever v. Wilson et al.*, Sup. Court U. S., Dec. term, 1869; *Ditson v. Ditson*, 4 Rhode, Island 284; 2 Bish. M. and Div. § 124, *et seq.*

Then, if the State courts have competent jurisdiction in such a case, as undoubtedly they have, they may go on and exercise that jurisdiction in the manner and to the extent prescribed by their own laws.

Under the laws of this State, by the contract and consummation of a marriage, the wife, if she has no separate estate, becomes entitled to dower in the husband's lands, and a certain distributive interest in his personal estate, if she survives him, and to temporary and permanent alimony out of his estate upon a separation by divorce in her favor. These are rights that she can not legally be deprived of, without her consent or her fault.—Rev. Code, §§ 1624, 1888, cl. 5, 1897, 2360, 2361, 2362, 2363. If this were not so, then these important statutory provisions in favor of the wife would be repealed or rendered null by a foreign divorce of which she had no notice and no knowledge, during its whole progress through the forms of a foreign court. To sue in her own domicil is necessary for the protection of the wife. It, therefore, overrides the technical rule,

that the husband's domicil is also the domicil of the wife. 2 Bish. M. and Div. § 763. Here, the testimony shows that the wife has no separate estate. The witnesses for the defendants say, when she was married, she " brought nothing with her." It also appears, that during her connection with the defendant Matthew Turner, as his wife, she was a chaste, industrious, economical, faithful, useful and obedient wife ; and that the husband's property is very considerable ; worth possibly not less than one hundred thousand dollars. It is also shown that his three children, by a former marriage, are already sufficiently provided for.

Under such a state of facts, the sum of thirty thousand dollars was not an unreasonable sum for permanent alimony, to be allowed to the wife, nor the sum of eight hundred dollars too large for temporary alimony.—*Ex parte Smith*, 34 Ala. 455 ; *Jeter v. Jeter*, 36 Ala. 391 ; Rev. Code, § 2362.

The other defendant, Edwin C. Turner, who is a son of complainant's husband, does not, in an equitable sense, stand in the court with clean hands. Whether he was cognizant of his father's scheme to dispose of his estate, in order to defeat the rights of complainant and procure a divorce in Indiana, and then turn her helpless upon the world, without the means of subsistance, is not so fully proven. But when any matter was to be transacted, which pushed things in that direction, he appears to have been always present, aiding and abetting. If he was not the public, recognized agent of his father, in the accomplishment of his purposes, the proofs leave it sufficiently certain that he was his confidential assistant. If he has come to evil by it, it is his own fault, and he must abide the consequences. *Quia in quo quis delinquit in eo de jure est puniendis.*—Coke, Litt. 233, *b.* A contract, deed or conveyance, or any other transaction made in furtherance of an illegal purpose, is itself illegal. Fraud vitiates every transaction that rests upon it. There can be no reasonable doubt, after reading Matthew Turner's letter to Mr. Macon, his father-in-law, bearing date the 26th day of December, 1867, after complainant's bill had been filed, that he still acknowledged that his " home" was still in Alabama,

and that it was his fixed intention to defeat his wife's suit for divorce, if he could. He then declares that he was " going to defend the suit to the last extremity and to the bottom dollar, sink who it may, elevate who it will."—(Mr. Macon's deposition.) The son seems ever to have been ready to help the accomplishment of this purpose. And we must regard the voluntary conveyance to him, made after the filing of the bill, as intended to be in furtherance of this end. After the complainant's suit was commenced, to aid her husband in the voluntary distribution of his property, so as to render one of the grand purposes of the suit abortive, was an unjustifiable attempt to defeat her rights. It is said that right in civil society is that which any man or woman is entitled to have, or to do, or to require from others, within the limits of prescribed law.—2 Kent, 1. To defeat this right, or to attempt to defeat it, whether by fraud or force, is forbidden by law.—1 Par. on Cont. 456, 5th ed. 1866 ; 2 ib. 769 ; 1 Fontb. Eq. 122, and notes, 6th ed ; 1 Story Eq. § 258, et seq. ; 2 Bouv. L. Dict., Trespass, p. 608, 12th ed. In a just controversy with the husband, the wife is entitled to have reasonable counsel fees allowed to her. Jeter v. Jeter, 36 Ala. 291. There are no grounds to sustain the defendant's demurrer to the bill.

No judgment is intended to be given, in this opinion, upon the validity or invalidity of the Indiana decree for divorce, further than it is connected with this case, and the complainant's rights in this suit.

There was, then, no error in the judgment and proceedings, in the court below, of which the appellants have any right to complain. Therefore, the decree and judgment of the chancellor is in all things affirmed, and the appellants, the said Matthew Turner, and the said Edwin C. Turner, will pay the costs of this appeal in this court and in the court below.