## FULGHAM *vs.* THE STATE.

[ASSAULT AND BATTERY BY HUSBAND UPON WIFE.]

1. *Husband; power of to correct wife.*—In this State the husband can not commit a battery upon his wife, by way of inflicting upon her "moderate correction" in order to enforce obedience to his just commands. (PECK, C. J., *dissenting.*)
2. *Same.*—The authority for "wife whipping" rests upon a relic of a barbarous and unchristian "privilege," which, even in the mother country, was never claimed to be law, except among people of the "lower rank." The law in this country recognizes no such distinction.

APPEAL from Circuit Court of Greene.

Tried before Hon. CHARLES PELHAM.

THIS was an indictment of the husband for an assault and battery upon his wife. The indictment charges that before the finding thereof, " George Fulgham assaulted and beat his wife, Matilda Fulgham, against the peace," &c. Appellant went to trial on plea of not guilty, and was convicted and fined.

From the bill of exceptions, it appears that the accused was chastising one of his children, when the wife remonstrated, thinking the punishment excessive. The child ran, pursued by the father, and both followed up by the wife. When the wife came up with her husband, he struck her twice on the back with a board, and she returned the blows with a switch. The blows inflicted on the wife made no permanent impression. Both were high tempered, and were emancipated slaves, and were husband and wife.

This being all the evidence, the court charged the jury that " if they believed that defendant struck his wife with a board, as described in the evidence, in anger, and not in self-defense, he was guilty of an assault and battery ; that words of provocation and abuse by the wife, if she used any at the time of the fight, would, under the statute of Alabama, be in justification or extenuation, as they might see fit." The defendant excepted to this charge, and requested the court to charge the jury that " a husband can not be convicted of a battery on his wife unless he inflicts a permanent injury, or uses such excessive violence or cruelty as indicates malignity or vindictiveness." This charge the court refused to give, and " further charged that the proposition that a husband could moderately chastise his wife, was a relic of barbarism, and no part of the law of Alabama, although it might be of North Carolina or Mississippi. To the refusal to give the charge asked, and to the remark above, defendant excepted."

The charges given, and the refusal to give the charge asked, are now assigned as error.

R. CRAWFORD, for appellant.—The first charge asked should have been given.—1 Winslow, (N. C.) p. 1, case No.

266; *Calvin Bradley v. State*, Walker Miss. Rep. p. 157; 2 Dev. & Bat. 365; 2 Humphries, 283; 27 Ala. 222.

The closing remark and charge of the court *mero motu* was erroneous, and prejudicial to appellant.—*Wicks v. State*, 44 Ala.

The first original charge given by the court was incomplete, and tended to mislead the jury.

ATTORNEY-GENERAL, *contra*.—1. The court did not err in charging the jury that a blow given in anger, and not in self-defense, is an assault and battery.—1 Bish. Cr. Law, § 409; 2 *ib*. § 63. But that opprobrious and abusive words given by the person assaulted, might be considered in extenuation or justification of the offense.—Revised Code, § 4198.

2. A married woman is as much under the protection of the law as any other member of the community. And the old doctrine of the common law, that a husband might moderately chastise his wife, was never in force in Alabama, and since the reign of Charles the Second has been exploded in England.—1 Bl. Com. 445; Schouler on Dom. Relations, 59.

The statement by the court of the difference between the laws of North Carolina and Mississippi and those of Alabama, is not error.

PETERS, J.—This is a criminal prosecution by indictment upon a charge of assault and battery by the husband upon the person of the wife. The defense relied on by the accused is, that a husband may give his wife moderate correction in order to secure her obedience to his just commands.

This authority, on the part of the husband, to chastise the wife with rudeness and blows in order to coerce her obedience to his domestic commands, was not admitted in the age of Judge Blackstone, or as he says, "in the polite reign of Charles the Second," *except* among "the lower rank of the people, who were always fond of the old common law," by which "they claim and exert their *ancient*

*privilege* " to give their wives "moderate correction," to secure subordination in the .family.—4 Bl. Com. 444, 445, marg. page. It will be seen from this reference, that this eminent and classic commentator on the law of England confines this brutal and unchristian "privilege" wholly to the "lower rank of the people." The most zealous advocates of "wife-whipping" have never gone beyond this unhappy rank. It has never been contended that this liability to be corrected with blows and stripes was the law for the wives of all the people—of those of the higher as well as those of the lower rank. The language of the authority relied on by the learned counsel for the accused, clearly shows that there was a rank of the people excluded from its operation. Such partial laws can not be enforced in this State. The law for one rank is the law for all ranks of the people, without regard to station. Judge Blackstone calls it merely an *ancient privilege*, and quotes no decided case, and possibly none such could then be found, which supports the privilege referred to by him, as an universal law. This distinguished author published his commentaries above one hundred years ago, when society was much more rude, out of the towns and cities in England, than it is at the present day in this country; and the exercise of a rude privilege there is no excuse for a like privilege here. If it was, the offense of witchcraft and sorcery, which were crimes at common law, and most cruelly punished against the voice of both reason and religion, might be indicted here.—4 Bl. Com. p. 60. Since then, however, learning, with its humanizing influences, has made great progress, and morals and religion have made some progress with it. Therefore, a rod which may be drawn through the wedding ring is not now deemed necessary to teach the wife her duty and subjection to the husband. The husband is therefore not justified or allowed by law to use such a weapon, or any other, for her moderate correction. The wife is not to be considered as the husband's slave. And the privilege, ancient though it be, to beat her with a stick, to pull her hair, choke her, spit in her face or kick her about the floor, or to inflict upon her

like indiguities, is not now acknowledged by our law.—
*Turner v. Turner*, 44 Ala. 437; *Goodrich v. Goodrich*,
44 Ala. 670; *Moyler v. Moyler*, 11 Ala. 620; *Saunders v.
Saunders*, 1 Rob. Ec. R. 549. The husband may defend
himself, his children, and those relations whom the law
permits him to defend, against the violence of the wife;
12 Ala. 587; 1 Bish. Cr. Law, 341. But in person, the
wife is entitled to the same protection of the law that the
husband can invoke for himself. She is a citizen of the
State, and is entitled, in person and in property, to the
fullest protection of its laws. Her sex does not degrade
her below the rank of the highest in the commonwealth.

Speaking of the duty of the husband to the wife, a late
expounder of the law of this great relation declares that
he "is bound to love his wife and to bear with her faults,
and if possible, by mild means to correct them."—Schouler
Dom. Rel. 59; 1 Bouv. Law Dict. 675, *Husband;  Goodrich
v. Goodrich*, 44 Ala. 670. This is the voice of the law, and
the voice of politeness and humanity, and I think also the
voice of religion, which is, after all, but pure and disinter-
ested love.—St. Paul's Epists. *ad* Corinths., *ubique*.

Besides this, the constitution has wisely and justly ex-
tended the protective power of the State to all its people
alike. It shield is stretched out over the high and the low,
the rich and the poor, the strong and the weak, the wise
and the simple, the learned and the unlearned, and the
good and the bad, without distinction of rank, caste or
sex. All stand upon the same footing before the law, "as
citizens of Alabama, possessing equal civil and political
rights and public privileges." And no special "privilege "
to any rank of the people is allowed to exist in this State,
because such a privilege is forbidden by the fundamental
law.—Const. Ala. 1867, Art. I, §§ 2, 32; *Dale v. Governor*,
3 Stew. 387. I therefore think that the common law of
" wife whipping" among " the lower rank of people " in
Great Britain, has never been the common law of this
State. It is, at best, but a low and barbarous custom, and
never was a law.

The husband may exercise over the wife " gentle re-

straint."—2 Kent, 181. And he may have security of the peace against the wife, and the wife against him.—4 Bla. Com. 445. And they may be indicted for assault and battery upon each other.—*Bradley v. The State*, Walker R. 156. But beyond this, "the rule of love has superseded the rule of force."—Schoul. Dom. Rel. 59.

There was, then, no error in the charge given, or in refusing the charge asked. Therefore, let the judgment of the court below be in all things affirmed.

PECK, C. J., *dissenting.*